STATE OF HAWAII, Plaintiff-Appellee, *v.* SOLONU'U TUUA, also known as Tapelu Tuua, Solonu'u Pusi, and Tapela, Defendant-Appellant, and ILUPELI PUSI, also known as Ioane Tua, Defendant

NO. 8022

(CRIMINAL NO. 51455)

AUGUST 30, 1982

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE GREIG
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY BURNS, C.J.

Defendant-Appellant Solonuʻu Tuua (Tuua) appeals his jury conviction of eight counts of Robbery in the First Degree, six in violation of section 708-840(1)(b)(ii) and two in violation of section 708-840(1)(b)(i) of the Hawaii Revised Statutes (HRS), and one count of Murder in violation of section 707-701, HRS.

Tuua presents two points of error:

1. The trial judge erred in denying Tuua's motions to suppress the in-court identifications of Tuua by witnesses Ahmad Rehman and Zbysek Kocur. Tuua contends that both witnesses had participated in an impermissibly suggestive pretrial identification procedure.

2. The eight robbery counts all fail to state an offense and therefore all must be dismissed.

We find no merit in point of error no. 1 or in point of error no. 2 with respect to robbery counts II, III, IV, V, VI, and IX (the threat of force counts) of the indictment. We find merit in point of error no. 2 with respect to robbery counts VII and VIII (the use of force counts).

On February 10, 1978, at about 8:30 p.m., three men entered the Kailan Restaurant on Liliha Street in Honolulu. The first man was armed with a handgun. He emptied the cash register and took

property from the patrons in the restaurant. The second man assisted the gunman and the third stood at the door. When the men fled, the restaurant owner and one of his employees pursued them via automobile. During the chase, the restaurant owner was fatally shot.

Kocur and Rehman were Canadian visitors who were at the restaurant during the robbery. At trial in July 1980, each testified that while they had been seated at a restaurant table with Thomas Amarino, they paid careful attention to the gunman who approached the table, demanded money from them, hit Amarino over the head with such force that it bled, and held a gun to Kocur's cheek with such force that the cheek was cut and scarred. Kocur and Rehman each gave descriptions of the gunman to the police that night and left Hawaii the next day. They returned to Hawaii to testify at Tuua's trial. The prosecutor instructed them as to when and where to appear in court. While waiting outside of the courtroom during the jury selection process, Kocur and Rehman saw Tuua exit the courtroom with a guard. Both testified that they immediately recognized Tuua as the gunman. At trial, Tuua moved to suppress their identification of him on the grounds that the pretrial viewing was so impermissively suggestive and conducive to irreparable misidentification under the totality of circumstances that to admit such evidence would be a denial of due process. The trial judge denied the motion. During the trial, in addition to Kocur and Rehman, two other eyewitnesses identified Tuua as the gunman.

## POINT OF ERROR NO. 1

When the defendant challenges admissibility of eyewitness identification on the grounds of impermissibly suggestive pretrial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) Whether the procedure was impermissibly or unnecessarily suggestive; and (2) If so, whether, upon viewing the totality of circumstances, such as opportunity to view at the time of the crime, the degree of attention, the accuracy of prior description, the level of certainty, and the elapsed time, the witness' identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the

jury. *State v. Malani,* 59 Haw. 167, 578 P.2d 236 (1978); *State v. Mitake,* 1 Haw. App. 335, 619 P.2d 1078 (1980).

These two questions involve determinations of fact. The trial judge's findings on them, whether express or implied, must be affirmed on appeal unless they are clearly erroneous. *State v. Patterson,* 58 Haw. 462, 571 P.2d 745 (1977); 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 374 (1969). *Cf. State v. Green,* 51 Haw. 260, 457 P.2d 505 (1969), (dealt with the admissibility of an inculpatory statement and suggests that the standard of review is "clear abuse of discretion," not "clearly erroneous.")

The trial judge did not find any prosecutorial misconduct, nor did he find the procedure unnecessarily or impermissibly suggestive. After considering the totality of circumstances, he determined that the witnesses' identification of Tuua was sufficiently reliable for presentation to the jury. We find nothing clearly erroneous in his factual findings and do not disagree with his legal conclusions.

### POINT OF ERROR NO. 2

Tuua next contends that Counts II, III, IV, V, VI, VII, VIII, and IX of the indictment each failed to state an offense and must therefore be dismissed.

This objection was not raised until the case was on appeal. Rule 12(b)(2), Hawaii Rules of Penal Procedure (1977) (HRPP), states that such an objection shall be noticed by the court at any time during the pendency of the proceeding.[1] Professor Wright says, "The objection is timely though first raised in a motion for new trial, a motion for

---

[1] Rule 12(b)(2) [HRPP]. *PLEADINGS AND MOTIONS BEFORE TRIAL; DEFENSES AND OBJECTIONS.*

\*   \*   \*

(b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

\*   \*   \*

(2) defenses and objections based on defects in the charge (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings) \* \* \*

arrest of judgment, on appeal, or by collateral attack." 1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 193 (1969) (footnotes omitted). The objection being late but timely, we must examine the sufficiency of the threat of force counts, II through VI and IX and of the use of force counts, VII and VIII.

The relevant part of section 708-840, HRS (1976), states:

§ 708-840 *Robbery in the first degree.* (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

  \*   \*   \*

  (b) He is armed with a dangerous instrument and:

   (i) He uses force against the person of the owner or any person present with intent to overcome the owner's physical resistance or physical power of resistance; or

   (ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.[2] [Footnote added.]

 \*   \*   \*

Counts II, III, IV, V, VI, and IX (the threat of force counts) of the indictment charge that Tuua,

while in the course of committing theft, and while armed with a dangerous weapon, to wit, a handgun, did threaten the imminent use of force against [person's name] with the intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree in violation of Section 708-840(1)(b)(ii) of the Hawaii Revised Statutes.

Thus, the threat of force counts fail to explicitly allege that the person against whom force was threatened was present.

Counts VII and VIII (the use of force counts) of the indictment charge that Tuua,

while in the course of committing theft, and while armed with a dangerous instrument, to wit, a handgun, did use force against

---

[2] We do not know why the statute requires the owner's involvement if force is used but does not if force is only threatened to be used.

[person's name] with the intent to overcome his physical resistance or physical power of resistance, thereby committing the offense of Robbery in the First Degree in violation of Section 708-840(1)(b)(i) of the Hawaii Revised Statutes.

Thus, the use of force counts fail to explicitly allege that the person whose physical resistance or whose physical power of resistance was intended to be overcome was the owner.

The United States Constitution (amendment VI) and the Constitution of the State of Hawaii (article 1, section 11 (1968)) both specify: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ."

Here, we find that, because Tuua knew what the charges against him were, his sixth amendment rights were satisfied. In their respective opening arguments, both prosecutor and defense counsel spoke only of the crimes of robbery and murder. Tuua did not dispute that the crimes of robbery and murder were committed. His defense was that of mistaken identification. In his instructions to the jury, the trial judge, without objection, told the jury that "the State charges the defendant with eight counts of Robbery in the First Degree" and properly instructed them as to the essential elements of each offense. With respect to the use of force counts, he spoke of the victim as being "the owner." With respect to the threat of force counts, he spoke of the presence of the threatened person.

However, the United States Constitution (amendment V) and the Constitution of the State of Hawaii (article 1, section 8 (1968)) both also specify: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." Unless the indictment contains all of the essential elements of the offense charged, the defendant's fifth amendment rights have not been satisfied.

Thus, Rule 7(c), HRPP, provides:

Rule 7 [HRPP]. *The Indictment, Complaint and Oral Charge.*
\* \* \*

(c) Nature and Contents. The charge shall be a plain, concise and definite written statement of the essential facts constituting the offense charged \* \* \*

Concerning that requirement, we read *State v. Faulkner,* 61 Haw. 177, 599 P.2d 285 (1979), and *State v. Jendrusch,* 58 Haw. 279, 567

P.2d 1242 (1977), as authority for the following statement of law: Just as the state must prove beyond a reasonable doubt all of the essential elements of the offense charged, *State v. Lima*, 64 Haw. 470, 643 P.2d 536 (1982), the State is also required to sufficiently allege them and that requirement is not satisfied by the fact that the accused actually knew them and was not misled by the failure to sufficiently allege all of them. *Accord, Ex Parte Barbara Seaton Ct. of Crim. Appeals of Texas*, 580 S.W.2d 593 (1979). *Contra, People v. Walker*, 83 Ill.2d 306, 415 N.E.2d 1021 (1980); *Lupro v. State*, 603 P.2d 468 (Alaska 1979); *People v. Israel*, 91 Cal. App.2d 773 (4th Dist. Ct. App. 1949).

Therefore, the question we must decide is whether the State sufficiently alleged in Counts II through IX all of the essential elements of robbery in the first degree.

In deciding this issue, we note the applicability of sections 806-26 and -31, HRS (1976), and of other portions of Rule 7(c), HRPP (1977).

§806-26 [HRS] *Meaning of words and phrases.* The words and phrases used in an indictment shall be construed according to their usual acceptation, except words and phrases which have been defined by law or which have acquired a legal signification, which words and phrases shall be construed according to their legal signification and shall be sufficient to convey that meaning.

§806-31 [HRS] *Indirect allegations.* No indictment or bill of particulars is invalid or insufficient for the reason merely that it alleges indirectly and by inference instead of directly any matters, facts, or circumstances connected with or constituting the offense, provided that the nature and cause of the accusation can be understood by a person of common understanding.

Rule 7 [HRPP]. *THE INDICTMENT, COMPLAINT AND ORAL CHARGE.*

    \*    \*    \*

(c) Nature and Contents. \* \* \* The charge need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it

by one or more specified means. The charge shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Formal defects, including error in the citation or its omission, shall not be ground for dismissal of the charge or for reversal of a conviction if the defect did not mislead the defendant to his prejudice.

Most federal and some state courts consider the timing of the objection and apply a flexible rule of interpretation which becomes more permissive and more liberal as more time elapses between the issuance of the indictment and the objection about its validity.[3]

Thus, Professor Wright says:

If the sufficiency of an indictment or information is not questioned at the trial, the pleading must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which defendant is convicted and even then, if the attack is collateral, there are cases saying that only in exceptional circumstances can the attack be considered. [Footnotes omitted.]

1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal,* § 123 (1969). *Accord, U.S. v. Coleman,* 656 F.2d 509 (9th Cir. 1981); *U.S. v. Pheaster,* 544 F.2d 353 (9th Cir. 1976); *Kaneshiro v. U.S.,* 445 F.2d 1266 (9th Cir. 1971), *cert. denied,* 404 U.S. 992 (1971); *Austin v. U.S.,* 414 F.2d 1155 (D.C. Cir. 1969); *U.S. v. Norman,* 391 F.2d 212 (6th Cir. 1968); *People v. Pujoue,* 61 Ill.2d 335, 335 N.E.2d 437 (1975).

Because *Jendrusch* and *Faulkner* cited some of the flexible rule cases but did not follow them, and because neither case mentioned nor focused on the timing of the objection, we conclude that they rejected the flexible interpretation. They appear to have opted for a standard of interpretation applicable in all situations where the issue is raised prior to the final decision on appeal.

With respect to its content, the *Jendrusch* and *Faulkner* standard appears not to be the "purist view" of *U.S. v. McGhee,* 488 F.2d 781

---

[3] We question the soundness of the flexible rule of interpretation. The defendant's tardiness in raising the objection may preclude him from complaining about defects in the indictment but it does not cure them. Moreover, Rule 12(b)(2), HRPP, expressly permits the objection to be made "at any time during the pendency of the proceedings," and defendant should not suffer adverse consequences if he complies with it.

(5th Cir. 1974), but rather the "fair construction" view of *Kaneshiro*, which held, *inter alia:* "[T]he standard for sufficiency is '* * * that the necessary facts appear in any form or by fair construction can be found within the terms of the indictment.' " *Kaneshiro, supra,* at 1269 (footnotes omitted).

Professor Wright expands on that concept:

> Rule 7(c) put an end to "the rules of technical and formalized pleading which had characterized an earlier era." The complex requirements of common law criminal pleading and of some state practices are now obsolete. The precision and detail formerly demanded are no longer required, imperfections of form that are not prejudicial are disregarded, and common sense and reason prevail over technicalities. [Footnotes omitted.]

1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 123 (1969).

> The fundamental purpose of the pleading is to inform the defendant of the charges so that he may prepare his defense, and the test for sufficiency ought to be whether it is fair to defendant to require him to defend on the basis of the charge as stated in the particular indictment or information. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just suggested. [Footnotes omitted.]

1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 125 at 233-234.

> [T]he pleading is sufficient, even if an essential averment is faulty in form, if by fair construction it may be found within the text. All parts of the pleading, or a count therein, must be looked to in determining its sufficiency. [Footnotes omitted.]

*Id.* at 234-235.

Thus, the issue is whether the essential elements of the offense charged appear in any form or by fair construction can be found within each count.

When we use the fair construction standard and the Hawaii Penal Code to define some of the words used in the threat of force counts,[4] we determine that those counts allege: while Tuua was

---

[4] We do not believe that the indictment is required to contain definitions of the words used.

committing theft (obtaining unauthorized control over the property of another with intent to deprive him of the property, HRS section 708-830(1)), and while he was armed with a handgun (which in the manner it was used or threatened to be used was capable of producing death or serious bodily injury, HRS section 708-840(2)), Tuua threatened the imminent use of force (any bodily impact, restraint; or confinement or the threat thereof, HRS section 703-300(2)) against a named person with intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of robbery in the first degree in violation of HRS section 708-840(1)(b)(ii).

Section 708-840(1)(b)(ii), HRS, makes it an offense to threaten the imminent use of force against the person of anyone who is present with intent to compel someone's acquiescence to the taking of or escaping with the property while in the course of committing theft. The Hawaii Penal Code does not define "present." For purposes of the statute, we think a person is present if he might interfere with the theft.

The question is whether the threat of force counts allege that the threat of force was directed against a person who might have interfered with the theft. We hold that they do.

The threat of force counts allege, *inter alia,* that Tuua, while armed with a dangerous weapon, to wit, a handgun, threatened the imminent use of force against a named person. According to HRS section 708-840(2), a handgun is not a dangerous instrument unless "in the manner it is used or threatened to be used" it is capable of producing death or serious bodily injury.

Thus, by describing the handgun as a dangerous instrument in a charge alleging robbery in the first degree, the State has implicitly alleged that it was threatened to be used. Hence, the State is alleging that Tuua, while committing theft, threatened the imminent use of force by the use of a handgun on a named person. In our view the reasonable probability and inference is that the named person was within the range of persons who might interfere with the theft and thus was present. Otherwise there is no rational basis for the threat. Other situations are possibilities, not probabilities, and do not give rise to inferences of similar magnitude.

Likewise, the use of force counts of the indictment allege: while Tuua was committing theft (obtaining unauthorized control over

the property of another with intent to deprive him of the property, HRS section 708-830(1)), and while he was armed with a handgun (which in the manner it was used or threatened to be used was capable of producing death or serious bodily injury, HRS section 708-840(2)) Tuua used force (any bodily impact, restraint, or confinement, or the threat thereof, HRS section 703-300(2)) against a named person with the intent to overcome his physical resistance or physical power of resistance, thus committing the offense of robbery in the first degree in violation of HRS 708-840(1)(b)(i).

Section 708-840(1)(b)(i), HRS, requires proof that force was used against the owner or any person present with intent to overcome the owner's physical resistance or physical power of resistance. The use of force counts do not explicitly state that the named person was present or that he was the owner.

With respect to the failure to directly allege presence, what we have said when discussing the threat of force counts applies to the use of force counts. By reasonable inference the named person was alleged to have been present at the theft when the threat was made.

The problem unique to the use of force counts is that they explicitly allege that Tuua intended to overcome the named person's physical resistance or physical power of resistance but do not explicitly allege that the named person was the owner or that Tuua intended to overcome the owner's physical resistance or physical power of resistance.

The use of force counts could reasonably be interpreted to describe a situation where the owner was not present and was completely unaware of the theft and the force was applied to overcome the physical resistance of someone other than the owner. It is just as reasonable to conclude that the named person is the owner as it is to conclude that he is a non-owner who is present. Since the use of force counts do not explicitly allege or reasonably permit the inference that the named person was the owner, or that Tuua intended to overcome the owner's physical resistance or physical power of resistance, they do not state an offense under HRS section 708-840(1)(b)(i).

The reference to the statutory sub-number does not solve the problem. *Ayre v. State*, 291 Md. 155, 433 A.2d 1150 (1981); *Commonwealth v. Walters*, 250 Pa. Super. Ct. 392, 378 A.2d 993 (1977). Moreover, in view of HRPP 7(c)'s, statement that an error in the

citation is not per se a reversible error, it would be unfair to require defendants to rely on the statutory citation to supply them with the essential elements of the offense charged.

In this case we are not called upon to decide to what extent the name of the offense cited in the indictment can be used to infer a fact essential to the indictment because the name "robbery in the first degree" does not sufficiently imply the essential element which was not explicitly alleged in Counts VII and VIII.

At this point we think it appropriate to quote some relevant and constructive criticism from *U.S. v. Roberts,* 296 F.2d 198, 202 (4th Cir. 1961), *cert. denied,* 369 U.S. 867, 82 S. Ct. 1033 (1962).

> It is beyond our understanding that a [Prosecutor] would undertake to draw an indictment without having before him the statute which defines the offense, or, having the statute before him could be so careless as to omit allegations meeting the statutory definition of one of the essential elements of the crime. A defective indictment might come from a well-ordered office, but inexcusable carelessness in offices of [Prosecutors] is suggested by the frequency with which this court is required to consider questions of possible prejudice to defendants arising out of unexplainable defects in indictments. *Such carelessness can save but little of the time of the [Prosecutor] in the preparation of indictments, but its consequence requires the needless expenditure of much time and effort by him, by defendants and their counsel and by the courts. Here, as in most situations, much waste could be avoided by an initial exercise of reasonable care. A few moments dedicated to care would have avoided entirely this controversy.*

> When these questions are before this Court, the [Prosecutor] or his Assistant at oral argument invariably disclaims personal involvement in the preparation of the defective indictment. It was drawn by someone else in the office.[7] The [Prosecutor], however, is responsible for the work-product of his office. It is proper and desirable for him to give his juniors training and experience in drafting indictments, but it is his duty to provide them with the guidance, counsel and supervision that are necessary to insure that their finished work is of a quality which the public has a right to expect and which should be required by a sense of professional pride. If the immediate cause of a defective indictment is the inexperience or carelessness of some junior-

assistant, the defect evidences the failure of the [Prosecutor] to properly organize and conduct the business of his office.

The Court takes this opportunity to suggest to the [Prosecutors] * * * that they carefully review the internal practices and procedures of their offices and take such steps as may be necessary to lift the quality of their work to acceptable standards.

---

7. We have no doubt as to the truth of such statements. In some instances the indictment was drawn by an inexperienced assistant who would not ordinarily be expected to carry the burden of oral argument in this Court. In other instances, the [Prosecutor] involved, doubtless[ly] has thought that someone other than the person immediately responsible for the deficiency could present the Government's case with less embarrassment.

*Id.* at 202 (emphasis added).

The judgment of the lower court with respect to Counts II, III, IV, V, VI, IX, and XIX is affirmed. The judgment with respect to Counts VII and VIII is reversed because of the failure to comply with the requirements of Rule 7(c), HRPP.

*Peter England Roberts (Alvin T. Sasaki and Patricia A. Loo* on the briefs), Deputy Public Defenders, for defendant-appellant.

*Thomas M. Pico, Jr.,* Deputy Prosecuting Attorney, County of Honolulu, for plaintiff-appellee.