947 P.2d 349

STATE of Hawai'i, Plaintiff–Appellee,

v.

Scott Yoshio MITSUDA, Defendant–Appellant.

No. 19926.

Supreme Court of Hawai'i.

Sept. 2, 1997.

Reconsideration Denied Oct. 13, 1997.

Joseph R. Mottl, III, Honolulu, on the briefs, for defendant-appellant.

Charlotte J. Duarte, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Following a jury trial, defendant-appellant Scott Yoshio Mitsuda was convicted of Burglary in the First Degree, in violation of Hawai'i Revised Statutes (HRS) § 708–810(1)(c) (1993) (Count I)[1] and Robbery in the First Degree, in violation of HRS § 708–840(1)(b)(ii) (1993)[2] (Count II). Mitsuda was subsequently sentenced to a ten-year term of imprisonment for Count I and a twenty-year term of imprisonment for Count II, with a mandatory minimum term of six years, eight months pursuant to HRS § 706–606.5 (1993) ("Sentencing of repeat offenders.").

On appeal, Mitsuda argues that: (1) the trial court erred when it denied Mitsuda's Motion for Judgment of Acquittal made at the close of the prosecution's case;[3] (2) the prosecution failed to present sufficient evidence to establish the elements of robbery; (3) the trial court plainly erred by failing to conduct a colloquy with Mitsuda regarding jury instructions on lesser included offenses, as required by State v. Kupau, 76 Hawai'i 387, 395–96 n. 13, 879 P.2d 492, 500–01, n. 13 (1994); (4) the trial court plainly erred in instructing the jury; and (5) the trial court abused its discretion by imposing the mandatory minimum sentence. Because, for the reasons stated below, we agree with Mitsuda's second contention,[4] we reverse Mitsuda's conviction and sentence with respect to Count II, Robbery in the First Degree.

## I. BACKGROUND

By complaint filed August 25, 1995, Mitsuda was charged, in Count II, as follows:

On or about the 13th day of July, 1995, in the City and County of Honolulu, State of Hawai'i, Scott Yoshio Mitsuda, while in the course of committing a theft, and while armed with a dangerous instrument, to wit, a screwdriver, did threaten the imminent use of force against Preston Watanabe, a person who was present, with the intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in violation of Section 708–840(1)(b)(ii) of the Hawaii Revised Statutes.

Mitsuda's trial commenced on February 27, 1996. Shirley Ohira testified that, on July 13, 1995, she lived with her husband, Todd Ohira, and her parents, Preston and Shirley Watanabe, in a two-and-a-half story house in Aiea. The Ohiras lived on the top floor and the Watanabes lived on the bottom floor.

At about 4:15 a.m. on July 13, 1995, Ms. Ohira was awakened by the family dog who was making a "stranger" bark. She went to her parents' room where she found her father already awake and going to "check it out." Mr. Watanabe and Ms. Ohira went upstairs to the front door together. Mr. Watanabe shined his flashlight around, and they saw someone on the bottom floor covering his head with a blanket. Mr. Watanabe went downstairs, turned on the lights, approached the intruder, and asked, "What are you doing in my house[?]" He then told Ms. Ohira to call 911. She went into another

---

1. None of Mitsuda's contentions on appeal challenge his burglary conviction.

2. For the pertinent text of HRS § 708–840, see Section II.A., infra.

3. This contention is not addressed herein because it is well established that, when the defense presents evidence after the denial of a motion for judgment of acquittal at the close of the prosecution's case, the defense waives any error by the trial court in denying the motion. State v. Pudiquet, 82 Hawai'i 419, 423, 922 P.2d 1032, 1036 (App.), cert. denied, 82 Hawai'i 360, 922 P.2d 973 (1996). Mitsuda acknowledges as much, but as-

serts that, pursuant to State v. Rodrigues, 6 Haw. App. 580, 733 P.2d 1222 (1987), he is nonetheless entitled to appellate review under the plain error doctrine. Mitsuda misinterprets Rodrigues. However, although he has waived any error in the denial of his motion for judgment of acquittal, which was not renewed after all parties had rested, we may review the sufficiency of the evidence to support the conviction, which Mitsuda challenges in his second point on appeal.

4. Our disposition renders it unnecessary to address Mitsuda's allegation of error regarding the jury instructions.

room to use the phone, but not before observing the intruder from a distance of about twenty feet, under fully lighted conditions, for about twenty seconds. Two or three weeks later, Ms. Ohira was called to the Pearl City Police Station where she made a positive identification of Mitsuda from a photo line-up of approximately eight photographs. She also identified Mitsuda in the courtroom as the intruder she had seen in their house.

Mr. Watanabe testified that, on the morning in question, he awoke at 4:15 a.m. to his alarm. Upon waking, he heard the dog barking and was getting up to investigate. Before he left his room, his daughter, Ms. Ohira, came to his room and asked if he had been making noise in the living room. He said he had not and went to try to calm the dog. At the time, Mr. Watanabe was carrying a flashlight.

When he was unable to calm the dog and Ms. Ohira said she heard someone in the living room, he shined his light into the living room and saw a comforter out of place. He saw someone trying to hide under the comforter and then turned on all the lights. He shouted at the man, asking what he was doing in the house. At first the man did not respond, but then got out from under the comforter and walked towards Mr. Watanabe at a normal pace while Mr. Watanabe walked toward him. When Mr. Watanabe repeated the question, the man said that he was sleeping, then said that he was waiting for a friend, and then said that he was a drug addict.

The man continued to walk in Mr. Watanabe's direction, and Mr. Watanabe told him to sit down and that the police had been called. Mr. Watanabe placed his hand on the man's chest and again told him to sit down, but the intruder continued to walk towards the stairs. The man then drew out a screwdriver about twelve inches long and pointed it at Mr. Watanabe, who reacted by grabbing the screwdriver. The man fought back, trying to get the screwdriver out of Mr. Watanabe's hands. Only one of the man's hands was on the screwdriver. Mr. Watanabe lost his grip on the screwdriver, and the man went running down the stairs and out the door. Mr. Watanabe chased him, but lost sight of him after about a minute.

Mr. Watanabe picked Mitsuda's photograph out of the line-up, but was unable to make a positive identification because the hair was different. In the courtroom, Mr. Watanabe positively identified Mitsuda.

Mrs. Watanabe testified that, on the morning in question, she was awakened as usual by the alarm, which was set for 4:15 a.m. When the Watanabes awoke, the dog was barking. As they were getting out of bed, Ms. Ohira came to the door. Mr. Watanabe and Ms. Ohira left the room, leaving Mrs. Watanabe behind. Hearing a commotion, Mrs. Watanabe left her room and saw an intruder in the living room, walking towards the stairs. Mrs. Watanabe was about ten feet from the intruder, and the lights were on. Mr. Watanabe was yelling at the intruder, trying to get him to sit on the stairs until the police arrived. Mrs. Watanabe next recalled that,

as the intruder walked to where my husband told him to come because he wanted him to sit on the stairway going up, not the stairwell going down, I saw him standing there and he was kind of like—what is that ?

Well, he wasn't still. You could tell he was trying to get away, yeah. He was trying to get away when I was there with my husband.

What happened was all I remember is that he just lifted up a screwdriver and from where I was—and I saw the screwdriver, the first thing that came to my mind was someone is going to get hurt.

When he lifted it, I remember when my husband grabbed, I grabbed ahold of the screwdriver, too, because I wanted to take it away from him.

. . . .

All I saw was the hand just went out because it just went right to my husband's chest, that really made me scared.

. . . .

Actually, I really thought—I really thought he hit him, but he hadn't.

Mrs. Watanabe was also able to positively identify Mitsuda from the photographic lineup, as well as at trial.

The evidence of the theft underlying the robbery was presented in the testimony of Todd Ohira and Mr. Watanabe. Mr. Ohira testified that, on July 13, 1995, there was a manicure case in the house. It was brown leather, about the size of a wallet, and contained various manicure implements. He did not take the case anywhere after July 13, 1995, and did not recall seeing it after that date. Mr. Watanabe testified that he last saw the manicure set on the kitchen table about a week before the incident, but that on July 13, 1995, after the intruder left, he saw some of the pieces from the set beneath the comforter where the intruder had been hiding.

The only witness for the defense was the defendant's wife, who testified that Mitsuda was home in bed with her throughout that night.

The jury adjudged Mitsuda guilty as charged on both counts. The prosecution moved to have Mitsuda sentenced as a repeat offender pursuant to HRS § 706-606.5, alleging that, on November 29, 1991, Mitsuda had been convicted of a class B felony, Burglary in the First Degree, and that the maximum term of imprisonment for that offense would not have expired by July 13, 1995, the date of the instant offenses. The sentencing hearing was continued due to a substitution of counsel for Mitsuda.

Prior to the rescheduled sentencing hearing, the prosecution also filed its "Motion for Extended Term of Imprisonment," pursuant to HRS §§ 706-661 and 706-662(1) (1993), seeking an extended term of imprisonment for life with the possibility of parole based on Mitsuda's status as a "persistent offender."

At the consolidated hearing on Mitsuda's sentencing and the prosecution's motions, the prosecution was granted a continuance due to the unavailability of its identification witnesses. The prosecution, however, failed to make an appearance at the rescheduled hearing. The court took judicial notice of the Presentence Report (PSI), to which Mitsuda

offered only minor corrections. The court ruled as follows:

> Okay, well as far as the motions are concerned, in regards to the Motion for Mandatory—for Sentencing of Repeat Offender, the [prosecutor's] affidavit as well as the Presentence Investigation Report is sufficient for the Court to make a finding that the allegation contained within. I should say the elements required for the sustaining of this motion have been met.
>
> And, as such, I will grant that motion.
>
> As for the Motion for Extended Term of Imprisonment, I think the standard is a little higher. The prosecution is not present to present any evidence to this court for it to make a finding beyond a reasonable doubt that this motion should be granted or that the elements I should say contained therein should be granted.
>
> And, as such, that motion is denied.

Mitsuda was sentenced to ten years of imprisonment for Count I, burglary, and twenty years of imprisonment for Count II, robbery, with a six-year-eight-month mandatory minimum term, all terms to run concurrently with each other and consecutively with sentences Mitsuda was then serving.

## II. DISCUSSION

### A. Robbery

■ Mitsuda contends that there was insufficient evidence to support his conviction for robbery because, as a matter of law, there is no robbery where the victim is unaware of the theft, and the evidence was undisputed that Mr. Watanabe did not discover the theft of the manicure set until after the intruder had fled. His argument requires interpretation of HRS § 708-840(1)(b)(ii).[5]

> The interpretation of a statute is a question of law we review *de novo*. *State v. Arceo*, [84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)]. In construing a statute, we are guided by the following principles:
>
> The starting point in statutory construction is to determine the legislative intent from the language of the statute

5. We express no opinion regarding the applica-

bility of our analysis to HRS § 708-840(1)(b)(i).

itself. It is a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute. Penal statutes are to be strictly construed. However, the strict construction rule does not permit the court to ignore legislative intent, nor require the court to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved.

*State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52 (citations omitted), *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993).

*State v. Kaakimaka*, 84 Hawai'i 280, 289–90, 933 P.2d 617, 626–27, *reconsideration denied*, 84 Hawai'i 496, 936 P.2d 191 (1997).

■ Mitsuda's contention that robbery requires the victim's awareness of the theft is correct under the common-law view of robbery.

For centuries the rule followed in England and later in the United States has been that in order for the defendant to be guilty of robbery it is essential that the prosecution prove that the defendant took the property by means of force or violence or by putting the victim in fear. The force or intimidation employed is the gist of the offense. Furthermore, the general rule is that the violence or intimidation must precede or be concomitant or contemporaneous with the taking. Violence or intimidation by the thief *subsequent to the taking* will not render the act robbery. In 4 Bl.Comm. 243, Blackstone, to emphasize that for robbery the larceny must be accompanied by violence or intimidation, said:

"... the taking must be by force, or a previous putting in fear, which makes the violation of the person more atrocious than privately stealing.... **For if one privately steals sixpence from the person of another, and afterward**

**keeps it by putting him in fear, this is no robbery, for the fear is subsequent....**"

*State v. Aldershof*, 220 Kan. 798, 556 P.2d 371, 373 (1976) (ellipses in original) (underscored emphasis in original) (bold emphasis added). Thus, at common law, theft by stealth, even if force or intimidation was employed in the escape, was not robbery. *See generally*, Charles E. Torcia, 4 *Wharton's Criminal Law* §§ 463–64 (15th ed.1995); Le Fave and Scott, *Criminal Law*, § 8.11 (2d ed.1986); 67 Am.Jur.2d, Robbery, §§ 29 and 32 (1985). In those jurisdictions whose robbery statutes, like the predecessor to HRS § 708–840,[6] codify the common-law definition of robbery, the victim's awareness of the theft has been held to be a necessary predicate to robbery based on either the requirement that the actual taking be by force or fear or the requirement that the taking be from the person or presence of the victim.

In *Commonwealth v. Williams*, 379 Pa.Super. 538, 550 A.2d 579 (1988), *appeal denied*, 522 Pa. 612, 563 A.2d 498 (1989), for example, the court held that robbery cannot be committed upon an unconscious, voluntarily intoxicated victim because such a victim is unaware of the taking and no force is necessary to compel him to part with conscious control of his property to the thief. The court relied on the reasoning of *Commonwealth v. Brown*, 506 Pa. 169, 484 A.2d 738 (1984), in which the Pennsylvania Supreme Court held that the force used in a pursesnatching was sufficient to elevate theft to robbery.

The force used in taking the purse from the victim's arm was a harmful touching of the person, accompanied with sufficient force to compel the victim to part with the conscious control of her property, and supports a robbery conviction under § 3701. *This conduct substantially differs from the case of the thief who merely takes the property of another with intent permanently to deprive him thereof, using no force or threat of force on the victim—like the pickpocket.... A victim who is aware*

---

6. HRS § 765–1 (1968) defined "robbery" as "the stealing of a thing from the person of another or from his custody in his presence, by force or putting him in fear."

*of the taking of property from his person is apt to reflex action to protect himself and his property and thus may be injured by the felon.*

*Williams,* 550 A.2d at 581 (emphasis in original) (quoting *Brown,* 484 A.2d at 742). *See also Robinson v. State,* 680 So.2d 481, 483 (Fla.Dist.Ct.App.1996) (explaining that "[t]he only element that distinguishes robbery from larceny or theft is that the property must have been taken from the person or custody of another by means of force, violence, assault or putting in fear. If the victim is not even aware of the taking at the time, it cannot be a taking by force or putting in fear."), *decision quashed and cause remanded on other grounds,* 692 So.2d 883 (Fla. 1997); *Harris v. State,* 589 So.2d 1006, 1007 (Fla.Dist.Ct.App.1991) (holding that, where victim discovered money and jewelry missing two days after sexual battery, defendant could not be convicted of robbery because, "[w]here the victim, at the time, is not even aware of the taking, it is not a taking by force or putting in fear").

However, this rationale—that there is no taking by force or intimidation and, therefore, no robbery, where the victim is unaware of the theft—is inapplicable in light of HRS § 708–840, which provides in pertinent part:

(1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

    (a) The person attempts to kill another, or intentionally inflicts or attempts to inflict serious bodily injury upon another; or

    (b) The person is armed with a dangerous instrument and:

        (i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance; or

        (ii) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

Under HRS § 708–840, use of force or intimidation "in the course of committing a theft" is the element that distinguishes robbery from theft. "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft, in the commission of theft, *or in the flight after the attempt or commission.*" HRS § 708–842 (1993) (emphasis added). It is clear, therefore, that under HRS § 708–840, force or intimidation need not be used in the actual taking of property to constitute robbery. *See State v. Arlt,* 9 Haw.App. 263, 833 P.2d 902 (1992).

Mitsuda argues, however, that the requirement that the victim be aware of the taking derives from the retention, in HRS § 708–840, of the requirement that the victim be "present." He relies on *People v. Clark,* 113 Mich.App. 477, 317 N.W.2d 664 (1982), in which the court held that, where the victim was unaware of the theft, the magistrate did not abuse his discretion by refusing to bind the defendant over on an armed robbery count. In *Clark,* the evidence at the preliminary hearing showed that the victim, a truck driver, had been inside a store making a delivery. As he walked back to his truck, he saw the defendant about one foot from the open door of the truck. When the victim was within ten to fifteen feet of the defendant, the defendant raised a crowbar and threatened, "Come any closer and I'll bash your brains out." The defendant ran, and the victim chased him. Only later did the victim learn that the safe in his truck had been forced open and money had been taken. *Id.,* 317 N.W.2d at 665.

The Michigan Court of Appeals framed the issue as "whether or not a victim[,] though assaulted, must have knowledge that property of his had been taken in order to support a charge of armed robbery." *Id.* The court explained that armed robbery requires a taking from the complainant's person or in his presence and that "[a] thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." *Id.* at 666 (citation omitted). "Where the person assaulted had no connection with the property, the essential element would not be satisfied." *Id.*

The court held that the magistrate properly refused to bind the defendant over on the charge of armed robbery because:

> In this case it does not appear that the victim was in such a situation where, but for violence or fear, he could have prevented his loss, because he did not have knowledge of the loss until after the defendant had escaped.
>
> What the defendant's assault on the complainant did in this case was to prevent complainant's opportunity to discover the loss before the defendant escaped.
>
> Under these circumstances we are of the opinion that such a secret taking of property should not be considered an armed robbery.

*Id.*

Although HRS § 708–840, unlike its predecessor, does not contain the language "from the person of another or from his custody in his presence," Mitsuda maintains that taking from the person or presence is still an element of robbery. He relies, in part, on *State v. Tuua*, 3 Haw.App. 287, 649 P.2d 1180 (1982). In that case, the Intermediate Court of Appeals (ICA) considered the sufficiency of an indictment alleging robbery counts under both HRS §§ 708–840(1)(b)(i) and (1)(b)(ii) that failed, in each count, to allege that the named victim was "present." The ICA noted that:

> Section 708–840(1)(b)(ii), HRS, makes it an offense to threaten the imminent use of force against the person of anyone who is present with intent to compel someone's acquiescence to the taking of or escaping with the property while in the course of committing theft [and armed with a dangerous instrument]. The Hawaii Penal Code does not define "present." *For purposes of the statute, we think a person is present if he [or she] might interfere with the theft.*

*Id.* at 296, 649 P.2d at 1186 (emphasis added). The ICA held that the indictment sufficiently alleged, by inference, the presence of the victim. *Id.* The next day, the ICA decided the same issue in *State v. Halemanu*, 3 Haw.App. 300, 650 P.2d 587 (1982). Then–Circuit Judge Acoba, sitting as a substitute on the ICA, disagreed that the essential element of the victim's presence had been sufficiently alleged in the indictment, where the allegation was by inference and required resort to the statute to determine its meaning. In his dissent, Judge Acoba observed that:

> The indictment did not allege that the named person was a person who was "present" at the time of the theft.
>
> The "presence" element is traceable to prior Hawaii law. "[T]he Code's definition of the [robbery] offenses are substantively similar to those of prior Hawaii law...." Commentary to HRS §§ 708–840 and 708–841. Under prior Hawaii law, robbery was defined as the "'stealing of a thing from the *person of another or from his custody or [sic] presence,* by force or putting him in fear.'" *Id.,* quoting HRS § 765–1 [1968] (emphasis added).
>
> The instant indictment does not indicate that the taking of property was from the named person by putting him in fear or from the custody or presence of the named person by putting him in fear. Indeed, it does not indicate that the threat was against a person present contemporaneously with the taking of property, an allegation necessary under the "presence" requirement of prior law and retained in the Penal Code. Under the express terms of the statute, the "presence" of the person threatened must be proved. Without such proof, robbery is not established.

3 Haw.App. at 315–16, 650 P.2d 587 (Acoba, J., dissenting) (brackets and ellipses in original) (emphasis added).

The prosecution argues that it was only required to prove that the victim was "present" during the threat, not during the theft. We agree with Judge Acoba that the requirement in HRS § 708–840—that the recipient of the threat, that is, the named victim of the robbery, be "present"—derives from the requirement under prior law that property be taken "from the person of another or from his custody *in his presence,*" and that the presence must be contemporaneous with the taking of the property.

> The owner may be very near to his property without having it under his personal protection at the moment, and a se-

cret taking of such property is not larceny from the person. *A different problem is presented when a man's attention is directed to the need of safeguarding certain property which belongs to him and is so situated at the time that he could guard it if not prevented by violence or deterred by fear.* Such property is regarded as being under his personal protection and the wrongful taking of it by violence or intimidation is robbery.

Perkins, *Criminal Law,* Robbery at 281 (2d ed.1969) (emphasis added). The "presence" of the victim is a distinguishing characteristic of robbery, and there is no indication in HRS § 708–840 or its legislative history that the legislature intended to delete it.

■ We also agree with the ICA that a person is "present," within the meaning of the statute, if he or she might interfere with the theft. In other words, a person is "present" with respect to robbery, if the thing taken "is so within his [or her] reach, inspection, observation or control, that he [or she] could, if not overcome by violence or prevented by fear, retain his [or her] possession of it." *Clark,* 317 N.W.2d at 666 (citation omitted). Where the victim is unaware of the theft, it is that unawareness, rather than violence or intimidation, that renders the person unable to retain possession of the property.

The prosecution contends that, under HRS § 708–840(1)(b)(ii), "whether the victim knows a theft is occurring at the time of the robbery is irrelevant and not an element of robbery which must be proven by the State" because the prosecution was required to prove only

> that Defendant: (1) while committing a theft; (2) was armed with a dangerous weapon; (3) which Defendant used to threaten Preston Watanabe (Mr. Watanabe) with the imminent use of force; (4) to enable Defendant to escape with property which he had taken from the residence.

The prosecution also argues that: (1) "[t]he State was required to prove that Defendant intended to threaten Mr. Watanabe with the screwdriver to escape with the property"; (2) there was overwhelming evidence from which the jury could infer that "Defendant intended

to wield the screwdriver to facilitate his escape with the property he had taken"; and (3) "[t]he State was required to prove that Defendant intended to threaten Mr. Watanabe with the screwdriver to escape with the property from the Watanabe home." The prosecution, however, ignores key language of HRS § 708–840(1)(b)(ii).

■ It is not the intent to escape with the property, or to facilitate or enable escape with the property, that the prosecution must prove; it is the "intent to compel acquiescence to the taking of or escaping with the property." HRS § 708–840(1)(b)(ii). The actual language of the statute supports Mitsuda's argument that the victim must be aware of the theft. "Acquiescence" is defined as the "act or condition of acquiescing or giving tacit assent; submission implying consent; compliance[.]" *The Random House College Dictionary,* 13 (rev. ed.1979). Where the victim of the threatened use of force has no knowledge of the theft, his or her assent, implied consent, compliance or submission to the "taking of or escaping with" the stolen property is conceptually impossible and need not be compelled by the defendant.

We have stated that,

> [g]iven the difficulty of proving the requisite state of mind by direct evidence in criminal cases, "[w]e have consistently held that ... proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the [defendant's conduct] is sufficient.... Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) (citations omitted); *see also State v. Simpson,* 64 Haw. 363, 373 n. 7, 641 P.2d 320, 326 n. 7 (1982).

*State v. Batson,* 73 Haw. 236, 254, 831 P.2d 924, 934, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992) (footnote omitted). Where the evidence is undisputed that the victim is unaware of the theft or attempted theft, it may not be logically or reasonably inferred from the circumstances that the defendant intended, by threatening the imminent use of force, "to compel acquiescence to

the taking of or escaping with the property." At best, the reasonable inferrence from the circumstances is that the defendant's intent was to escape. *See, e.g., People v. Nixon,* 156 A.D.2d 144, 548 N.Y.S.2d 194, 195 (1989) (reversing conviction of Robbery in the Third Degree because evidence was insufficient to establish that defendant's use of force was for the purpose of overcoming resistance to the retention of the property immediately after the taking, where "under the circumstances, it would appear highly improbable that defendant's use of force was accompanied by any intention to assert or reassert control over the [stolen property].... It would seem far more likely that whatever force was used by the defendant was intended solely to facilitate his escape[.]").

Under our rules of statutory construction, we are bound to give effect to all parts of a statute. We cannot, as does the prosecution, construe the phrase "intent to compel acquiescence" as superfluous, void or insignificant because the construction urged by Mitsuda— that the victim must be aware of the theft— gives force to and preserves all words of the statute. Moreover, that construction harmonizes HRS § 708-840 with the prior law of robbery by giving meaning to the requirement that the person threatened be "present."

Finally, penal statutes are to be strictly construed unless a strict construction requires the court to ignore legislative intent or to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved. The Commentary on §§ 708-840 and 708-841 explains that:

> Basically, robbery appears to consist of both theft and threatened or actual assault. It is significant to note, however, that *the theft acts as an incentive to the threatened use of force.* Thus the combination of these two criminal activities has a multiplicative, rather than a simple additive effect.

This increased risk of harm is one reason why robbery is treated as a separate offense and more severely penalized than the sum of its simple components would seem to indicate.[7] Another reason which has been advanced for the separate treatment of robbery is that *the average citizen feels a special degree of affront at the prospect of having his possessions taken through the threat or use of force.*

(Footnotes omitted.) (Emphases added.) The Commentary cites to the Model Penal Code (MPC) Tentative Draft comments, which further explains that "[r]obbery is appropriately defined as a separate and serious offense because of the special elements of danger commonly associated with *forcible theft from the person.*" MPC Commentary, Article 222 at 95 (emphasis added).

> There is a special element of terror in this kind of depradation. The ordinary citizen does not feel particularly threatened by surreptitious larceny, embezzlement, or fraud. But there is understandable abhorrence of the robber who accosts on the streets and who menaces his [or her] victims with actual or threatened violence against which there is a general sense of helplessness.... In addition, the robber may be distinguished from the stealthy thief by the hardihood that enables him [or her] to carry out his [or her] purpose in the presence of his [or her] victim and over his [or her] opposition—obstacles that might deter ordinary sneak thieves and that justify the feeling of special danger evoked by robbery.

*Id.* at 98. Where the theft of the property is accomplished without the knowledge of the victim, it cannot be said that the theft is the incentive for the threatened use of force, and neither the special affront at the prospect of having "possessions taken through the threat or use of force" nor the "special elements of

---

7. In *State v. Ah Choy,* 70 Haw. 618, 780 P.2d 1097 (1989), the court, by way of illustration, calculated the maximum sentence available had the defendant been convicted of and charged separately for assault and theft, and compared that to the twenty-year maximum indeterminate sentence for robbery in the first degree. *Id.* at 621–22, n. 2, 780 P.2d at 1100 n. 2. In this case, the difference is more striking. Had Mitsuda been sentenced for theft in the fourth degree (no value was established for the manicure set, *see* HRS § 708-801(3)) and terroristic threatening in the first degree, even if the sentences were imposed consecutively, the maximum length of his imprisonment would be five years and thirty days, as opposed to the twenty-year sentence he received for robbery in the first degree.

danger commonly associated with forcible theft from the person" are present.

█ We therefore agree with Mitsuda that, on the facts of this case, there was insufficient evidence as a matter of law to support Mitsuda's conviction of Robbery in the First Degree. We hold that the victim's awareness of the theft is a necessary element of robbery pursuant to HRS § 708–840(1)(b)(ii). This interpretation is compelled by the plain language of the statute, which requires that the person threatened be "present" and that the threat be made with the intent "to compel acquiescence to the taking of or escaping with the property." It is also consistent with prior law and is supported by the rationale for punishing robbery more severely than the sum of its component offenses. Finally, this result is compelled by the strict construction rule. Accordingly, we reverse Mitsuda's conviction and sentence for Count II, Robbery in the First Degree.

Because: (1) the jury necessarily found that Mitsuda was guilty of the included offense of theft; (2) there was sufficient evidence to support the conviction of theft in the fourth degree; and (3) we reject Mitsuda's argument that the jury instructions regarding theft were prejudicially insufficient, erroneous or misleading, we remand to the circuit court (1) with instructions to enter a judgment of conviction on the included offense of theft in the fourth degree in violation of HRS § 708–833; and (2) for sentencing in accordance with HRS § 706–663. *See State v. Malufau*, 80 Hawai‘i 126, 135, 906 P.2d 612, 621 (1995).

### B. *Repeat Offender Sentencing*

Mitsuda contends that the trial court erred in imposing a mandatory minimum sentence based on his status as a repeat offender because (1) "the record fails to show that he was represented by counsel during the alleged prior offense"; and (2) even if the requisite showing had been made, Mitsuda should only have received a three-year-four-month mandatory minimum.

█ "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the

absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *State v. Cornelio*, 84 Hawai‘i 476, 483, 935 P.2d 1021, 1028 (1997) (citations omitted).

We reject Mitsuda's first argument. In his reply brief, he acknowledges that the issue is controlled by *State v. Sinagoga*, 81 Hawai‘i 421, 918 P.2d 228 (App.1996). In that case, the ICA outlined the procedures to be followed where a trial court uses a defendant's prior convictions as a basis for enhancement of sentence. *Id.* at 447, 918 P.2d at 254. The trial court followed those procedures in this case.

█ However, because we reverse Mitsuda's sentence for Robbery in the First Degree, we agree with Mitsuda that, pursuant to HRS §§ 706–606.5(1)(a)(iii) and 706–606.5(2)(d), his mandatory minimum sentence should have been three years, four months rather than six years, eight months. The latter subsection provides that:

> (2) Except as in subsection (3), a person shall not be sentenced to a mandatory minimum term of imprisonment under this section unless the instant felony offense was committed during such period as follows:
>
> . . . .
>
> (d) Within ten years after a prior felony conviction where the prior felony conviction was for a class B felony[.]

The prior felony conviction alleged in the prosecutor's affidavit in support of the motion for mandatory minimum sentencing was Burglary in the First Degree, a class B felony. *See* HRS § 708–810(3). Although Mitsuda was convicted of other felonies less than two weeks *after* the date of the instant offense, those felonies are not "prior felony convictions" within the meaning of HRS § 706–606.5. *See Cornelio*, 84 Hawai‘i at 492 n. 32, 935 P.2d at 1037 n. 32. Therefore, Mitsuda had only one prior felony conviction within the relevant time period.

Where the defendant has one prior felony conviction and the instant conviction is for a class B felony, subsection (1)(a)(iii) provides that the mandatory minimum period of imprisonment is three years, four months.

Therefore, the imposition of a six-year-eight-month mandatory minimum is inconsistent with the applicable statutory command.[8]

Accordingly, we vacate the six-year-eight-month mandatory minimum term of imprisonment and remand this matter to the circuit court with instructions to amend the sentencing order to reflect a mandatory minimum sentence of three years, four months.

### III.  CONCLUSION

For the reasons stated above, we reverse Mitsuda's conviction and sentence with respect to Count II, Robbery in the First Degree.  We remand to the circuit court with instructions to enter an order convicting Mitsuda of Theft in the Fourth Degree and to sentence him in accordance with HRS § 706–663.  We vacate the six year, eight month mandatory minimum term of imprisonment and remand this matter to the circuit court with instructions to amend the sentencing order to reflect a three year, four month mandatory minimum sentence in accordance with HRS § 706–606.5(1)(a)(iii).

NAKAYAMA, Justice, dissenting, with whom RAMIL, Justice, joins.

I respectfully dissent from the majority's holding that the victim's awareness of the theft is a necessary element of robbery pursuant to Hawai'i Revised Statutes (HRS) § 708–840(1)(b)(ii) (1993).

In contrast to the majority, I would hold that it is the perpetrator's intent, specifically, the intent to compel acquiescence to the perpetrator's taking of or escape with the property, that is the necessary element of robbery.  The victim's awareness of the theft does not need to be examined and is not a necessary element of robbery.

The statute in question is HRS § 708–840(1)(b)(ii), which states in pertinent part:

§ 708–840 **Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

(b) The person is armed with a dangerous instrument and:

(ii) The person threatens the imminent use of force against the person of anyone who is present with *intent to compel acquiescence* to the taking of or escaping with the property.

(Emphasis added.)

The prosecution was required to show that defendant-appellant Scott Yoshio Mitsuda (the defendant): (1) while committing a theft; (2) was armed with a dangerous weapon; (3) which the defendant used to threaten with the imminent use of force; and (4) with the intent to compel acquiescence to the defendant escaping with property.

Under the statute, the prosecution must prove that the defendant, while in the course of theft, threatened the imminent use of force against Mr. Watanabe with the "intent to compel acquiescence to the taking of or escaping with the property."  The prosecution must prove that the defendant "intended to compel acquiescence," but was not required to show Mr. Watanabe actually acquiesced to the defendant's actions.  *Cf. State v. Robins,* 66 Haw. 312, 314, 660 P.2d 39, 41 (1983) (offense of burglary requires person to enter property with intent to commit a crime against person or property rights; however, the crime intended to be committed does not actually have to be committed for the offense to be completed, only the intent must be formed).  It was incumbent on the prosecution to prove the Defendant's intent to compel Mr. Watanabe to acquiesce to his escape with the property.  The state of mind of Mr. Watanabe and his awareness of the theft were not at issue because only the defendant's intent was relevant.

Although I do not agree with the rationale by the majority in dismissing the charge of robbery in the first degree, the evidence supporting the charge, insofar as the theft of

---

8.  We note, however, that, where the defendant has one prior felony conviction and the instant conviction is for a class A felony, a mandatory minimum term of six years, eight months is mandated.  HRS § 706–606.5(1)(a)(ii).  Therefore, the trial court did not abuse its discretion in imposing that mandatory minimum term in connection with Robbery in the First Degree, a class A felony.  It is only because that conviction is reversed that the mandatory minimum term must be reduced to three years, four months.

the property, was skimpy. However, giving full weight to the apparent findings by the jury, I would be compelled to affirm the conviction of robbery in the first degree.