**STATE OF HAWAII**, Plaintiff–Appellee, v. **DAVID RUSSELL AH CHOY**, Defendant–Appellant

NO. 13363

(CR. NO. 87–1271)

SEPTEMBER 18, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

Defendant–Appellant David Russell Ah Choy (Appellant) appeals from his convictions for attempted murder in the second degree in violation of Hawaii Revised Statutes (HRS) §§ 705–500 and 707–701.5(1), and robbery in the first degree in violation of HRS § 708–840(1)(b)(i). Appellant was sentenced to concurrent terms of life imprisonment with the

possibility of parole for the attempted murder conviction and twenty years imprisonment for the robbery in the first degree conviction. Appellant was also sentenced to concurrent mandatory minimum terms of six years and eight months for each conviction as a repeat offender. The dispositive issue on appeal is whether the trial court committed plain error by failing to properly instruct the jury of their duty to find Appellant guilty of only the attempted murder count if they find Appellant committed that offense concurrently with the commission of robbery in the first degree. We answer in the affirmative and vacate the sentence and judgment with respect to robbery in the first degree.

I.

On the evening of September 8, 1987, Appellant entered a sundry store located in the Prince Kuhio Hotel in Waikiki and brought a candy bar to the cash register counter. When the cashier turned to ring in the sale, Appellant stabbed the cashier in her upper neck with a large knife, causing her to fall to the ground. Appellant then reached into the open register and removed the money. While Appellant was occupied with the contents of the cash register, the badly bleeding cashier dashed out of the store for help. Appellant fled before police arrived.

A police officer investigating the crime noted that the description of the suspect matched that of Appellant, with whom he had dealt on prior occasions. Police officers then proceeded to Appellant's apartment. When the officers began questioning Appellant at his front door, Appellant attempted to close the door. Before Appellant could do so, however, a police officer placed his foot in the doorway thereby preventing the door from closing, and forcibly pulled Appellant out of his apartment. Appellant was then placed in a field line–up assembled at the base of the apartment building and photographed.

At the trial by jury, the store cashier identified Appellant in court as her attacker. She also testified that she previously identified Appellant as her attacker from a police photo album containing over a hundred photographs of various persons, and in a live line–up conducted at the police station. Her testimony was corroborated by an off–duty hotel security officer who testified that at around the time of the robbery, he observed Appellant crossing Liliuokalani Avenue from the Prince Kuhio Hotel side of the road.

The jury found Appellant guilty as charged of attempted murder in the second degree (Count I) and robbery in the first degree (Count II). Appellant filed a Motion for Judgment of Acquittal as to Count I on the ground that the evidence did not support his intent to kill the cashier. Appellant also filed a Motion for a New Trial on the basis of the State's failure to list a rebuttal witness pursuant to Hawaii Rules of Penal Procedure (HRPP) Rule 12.1. The trial court denied both motions and issued judgments of conviction for attempted murder in the second degree and robbery in the first degree.

## II.

At common law, robbery was "defined as the felonious taking of money or goods of value from the person of another or in his presence, against his will, by force or by putting him in fear." 67 Am. Jur. 2d *Robbery* § 1 (1985). Because "the core of the robbery offense is the combination of theft and the fact or threat of immediate injury," Model Penal Code § 222.1 Comment 1 at 98 (1960), the common law thought of robbery as aggravated theft, "a greater crime than the sum of the two lesser crimes of larceny and assault (or battery)," LaFave and Scott, *Criminal Law* 692 n.3 (1972), which carried a "punishment more severe than the combined penalties for larceny and assault," Note, *A Rationale of the Law of Aggravated Theft*, 54 Colum. L. Rev. 84, 102 (1954).

The Hawaii legislature first codified the offense of robbery at Chapter XV of the Hawaii Penal Code of 1869 (HPC of 1869), and in keeping with the common law approach, provided that the penalty for robbery be greater than the sum of the penalties of its component offenses. However, as was the practice in most other jurisdictions, the codification of the offense led to the division of the crime of robbery into degrees or grades, with different punishments, according to the means by which, or the circumstances under which, the offense was committed. *See* HPC of 1869, Chapter XV, ¶ 8. This early statutory approach to defining robbery in grades remains the approach today at HRS §§ 708–840 and 708–841, which continues to define the offense in substantially the same language as the prior Hawaii law. Thus, as was the case under Chapter XV of the Hawaii Penal Code of 1869, robbery in the first degree can be committed by various methods, including attempts to kill another in the course of committing theft, HRS § 708–840(1)(a), or as the jury found in the instant

case, by using force against a person with intent to overcome their physical power of resistance while armed with a dangerous instrument in the course of committing theft, HRS § 708–840(1)(b)(i).[1]

HRS §§ 708–840 and –841 also continues to recognize the early common law form of the offense of robbery. As stated in the Commentary to §§ 708–840 and –841:

> Basically, robbery appears to consist of both theft and threatened or actual assault. It is significant to note, however, that the theft acts as an incentive to the threatened use of force. Thus the combination of these two criminal activities has a multiplicative, rather than a single additive effect.

In addition, as was the approach under the common law, the legislature today, in recognition of the "increased risk of harm" present in a robbery "than the sum of its simple components would seem to indicate" has sought to punish robbery "more severely . . . than the sum of its simple components."[2] *Id.* We will not presume that the legislature intended to

---

[1] HRS § 708–840(1) provides:

(1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

    (a)    He attempts to kill another, or intentionally inflicts or attempts to inflict serious bodily injury upon another; or

    (b)    He is armed with a dangerous instrument and:

        (i)    He uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance: or

        (2)    He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

The prosecutor has the discretion to charge the defendant who attempts to kill while committing theft under either § 708–840(1)(a), which includes "attempts to kill" as an element of that provision, or, as done in the instant case, under § 708–840(1)(b)(i), whenever the defendant is armed with a dangerous instrument. *State v. Mendonca*, 68 Haw. 280, 283, 711 P.2d 731, 735 (1985).

[2] Thus, by way of illustration, under our sentencing statutes, a defendant who commits an assault in the course of committing a theft, if separately charged and convicted of the crimes of assault and theft, could be sentenced to a concurrent sentence of imprisonment ranging from ten years to five years, or a consecutive

create an anomaly or an absurd result. It is in recognition of the legislature's intent to treat robbery as a separate and more serious offense than the sum of its component offenses that we conclude that the legislature never intended that a defendant be convicted of both robbery in the first degree and its component offense of attempted murder, in the absence of evidence that the defendant committed both offenses separately in time. Thus, where the defendant is being tried for both attempted murder and robbery in the first degree under HRS § 708–840(1)(b)(i), the trial court is required to instruct the jury that if they find the defendant committed both attempted murder and robbery in the first degree concurrently in time, the jury need not render guilty verdicts for both offenses, but must, in keeping with the legislature's intent that a defendant who attempts to kill be sentenced to life imprisonment, HRS § 706–656, find the defendant guilty of only the attempted murder count, without determining whether defendant is guilty of robbery in the first degree. However, as in the case of *State v. Mendonca*, 68 Haw. 280, 711 P.2d 731 (1985), where there exists evidence supporting a finding that the defendant committed both attempted murder and robbery in the first degree as "two separate crimes closely related in time," the jury may find the defendant guilty of both offenses.[3]

---

sentence of imprisonment ranging from fifteen years to five years and three months. *See* HRS §§ 706–660, 707–663 and 706–668.5. This is compared to the more severe mandatory maximum sentence imposed for robbery in the first degree of twenty years imprisonment without the possibility of parole or probation. *See* HRS §§ 708–840(3) and 706–659.

[3] The facts in *Mendonca* were as follows:

Mendonca and Yasay decided to rob a gambling "banker" (a person who holds gambling money proceeds). In the early morning hours, they drove after the car of [the banker] Gary Ramos . . . intending to rob him. While Yasay drove, Mendonca fired several shots and wounded Ramos. After chasing Ramos for a few miles and nearly crashing into Ramos' car, Yasay said, "Let's just let it go." Mendonca replied, "No, let's go, man. *We have to get him now*." Transcript, August 8–9, 1984 at 139 (emphasis added). After Ramos' car crashed, Mendonca jumped out of Yasay's car and began shooting. Yasay testified that Mendonca was shooting at the car; it was too dark to see exactly where Ramos was. Ramos returned fire and shot Yasay and Mendonca fled.

68 Haw. at 281, 711 P.2d at 732–33.

In the instant case, it was plain error for the trial court to fail to instruct the jury of their duty to find Appellant guilty of only the attempted murder count if they determined that Appellant committed that offense concurrently with the commission of robbery in the first degree. The instruction should have been framed so that once the jury determined that Appellant was guilty of attempted murder they need not go any further with respect to the robbery count.

We uphold the sentence imposed as to the conviction of attempted murder, but set aside all other aspects of the sentence imposed. If by chance, Appellant's conviction for attempted murder is set aside, we hold that he stands convicted of robbery in the first degree.

### III.

Turning to Appellant's points of error, Appellant raises four issues on appeal: (1) whether the trial court erred by denying his Motion for Judgment of Acquittal for attempted murder on the basis of insufficient evidence of his intent to kill the cashier; (2) whether the trial court erred by denying his Motion to Suppress the photographs of the field line–up on the ground that the court's finding of exigent circumstances is clearly erroneous; (3) whether the trial court abused its discretion by permitting a medical doctor to testify on hypothetical life threatening injuries, and (4) whether the trial court abused its discretion by allowing the State's witness to rebut Appellant's alibi witness' testimony.

---

In affirming Mendonca's conviction for attempted robbery under HRS § 708–840(1)(b)(i) and attempted murder under HRS § 707–701, we stated that:

> Yasay testified he and Mendonca tried to rob Ramos. But after Ramos attempted to escape and Yasay wanted to give up the chase, Mendonca said, "No; let's go, man. We have to get him now." After Ramos' car had crashed (so there was no need to fire the gun to halt Ramos' flight), Mendonca began firing wildly at the car while Ramos was still presumably inside. One could reasonably infer from the circumstantial evidence and Mendonca's words and acts that he then intended to kill Ramos. Mendonca thus committed two separate crimes closely related in time, and no double jeopardy violation occurred. Substantial evidence exists to support both convictions. (Citations omitted).

68 Haw. at 285–86, 711 P.2d at 735.

## A.

Appellant contends that the trial court should have granted his Motion for Judgment of Acquittal on the attempted murder count since there was insufficient evidence of his intent to kill the store cashier.

Appellant's argument is without merit. Intent to kill is rarely proven by direct evidence. We have recognized circumstantial evidence and reasonable inferences arising from circumstances surrounding the act as sufficient to prove the requisite intent to kill. *State v. Sadino*, 64 Haw. 427, 642 P.2d 534 (1982). From the very serious nature and location of the wound, and the violent use of a ten inch long knife in the attack, there was sufficient evidence for the jury to reasonably infer that Appellant clearly intended to kill.

## B.

In denying Appellant's motion to suppress the photographs of the field line–up as fruits of an illegal seizure, the trial court ruled that the police had probable cause to question Appellant and that there existed exigent circumstances justifying his involuntary removal from his apartment. Assuming that the trial court's finding of exigent circumstances is clearly erroneous, we hold that this error was harmless since the photos were not permitted into evidence at trial, nor used in the identification of Appellant as the alleged offender.

## C.

Appellant next contends that the trial court abused its discretion by allowing Dr. Greig, who treated the cashier in the emergency room of the hospital, to answer the State's hypothetical questions on life threatening injuries since the questions asked were not based upon facts in evidence and were too prejudicial.[4]

---

[4] On direct examination, Dr. Greig described the internal structures which were located near the cashier's head wound. Tr. 7/11/88 at 76–77. Then, over objection by Appellant, testified to the possible results had the knife damaged those

Allowance of expert testimony is addressed to the trial court's discretion. *Friedrich v. Department of Transp.*, 60 Haw. 32, 38, 586 P.2d 1037, 1041 (1978). Hawaii Rules of Evidence (HRE), Rule 702, permits "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" whenever "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." However, it is well established that "in order to so assist the jury an expert must base his testimony upon a sound factual foundation; any inferences or opinions must be the product of an explicable and reliable system of analysis; and such opinions must add to the common understanding of the jury." *State v. Kim*, 64 Haw. 598, 604, 645 P.2d 1330, 1336 (1982). Moreover, "the probative value of such testimony must not be outweighed by the likelihood of prejudice, confusion or waste of time." *Id.* at 605, 645 P.2d at 1336; HRE Rule 403.

We find the hypothetical questions objected to by Appellant were clearly relevant to establishing the elements of the attempted murder offense and were based upon a sound factual foundation. Before the prosecutor posed the questions, Dr. Greig testified to the various biological structures situated in close proximity to the wound. The questions therefore merely asked whether death could have resulted had the knife injured those structures previously testified to. Finally, the potential for prejudice did not outweigh the probativeness of the hypothetical questions and responses. Members of the jury, not being trained in medicine, benefited from the expert testimony on the life threatening nature of stab wounds to the internal structures located close to the wound actually inflicted. The fact that the knife did not damage those structures was well understood by the jury as no suggestion was ever made by the prosecution that the structures were in fact injured in the attack. Nor did the prosecution suggest that the testified to dangerous effects of the hypothetical wounds applied to the actual wound.

---

structures. His testimony was that (1) had the knife severed the cashier's carotid artery, she would have had an 80 per cent chance of a stroke; (2) had the knife entered her trachea, she would have probably drowned in the blood which would have flooded her airways; and (3) had the knife transsected her spinal cord, she would have stopped breathing. *Id.* at 79–81.

Accordingly, we hold the trial court did not abuse its discretion by permitting Dr. Greig to answer the hypothetical questions.

### D.

Finally, Appellant argues that the trial court erred in allowing the State's witness to rebut Appellant's alibi witness' testimony since the prosecution violated Rule 12.1, HRPP,[5] by failing to name its rebuttal witness before trial.

Though we are deeply troubled by the prosecutor's failure to abide by our rules of discovery, *State v. Davis*, 63 Haw. 191, 196–97, 624 P.2d 376, 380 (1981), we cannot ignore the direct testimony of the store cashier who positively identified Appellant as her attacker, nor the direct testimony of the off–duty hotel security guard who saw Appellant crossing from the hotel side of Liliuokalani Avenue around the time of the robbery. This testimony identifying Appellant overwhelmingly contradicted Appellant's alibi witness. Accordingly, we hold the trial court's admission of the rebuttal witness' testimony harmless error.

Remanded for action consistent herewith.

*Richard L. Hoke* for Defendant–Appellant.

*Vickie L. Silberstein*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

---

[5] Rule 12.1(b), HRPP, provides that:

Upon receipt of notice that the defendant intends to rely upon an alibi defense, the prosecutor shall inform the defendant in writing of the specific time, date, and place at which the offense is alleged to have been committed. The defendant shall then inform the prosecutor in writing of the specific place at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. The prosecutor shall then inform the defendant in writing of the names and addresses of the witnesses upon whom the government intends to rely to establish defendant's presence at the scene of the alleged offense.