319 P.3d 272

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

**v.**

**Anthony SANTIAGO, Petitioner/Defendant–Appellant.**

**No. SCWC–11–0001078.**

Supreme Court of Hawai'i.

Dec. 20, 2013.

Stuart N. Fujioka, Honolulu, for petitioner.

Brandon H. Ito (on the briefs), for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by ACOBA, J.

We hold that Petitioner/Defendant–Appellant Anthony Santiago (Petitioner or Anthony Santiago) may not be convicted of both Robbery in the Second Degree, Hawai'i Revised Statutes (HRS) § 708–841 (Supp.2013) (Count one), and Assault in the First Degree, HRS § 707–710 (1993) (Count two), inasmuch as (1) the element of infliction of severe bodily injury is common to both offenses, (2) the jury apparently relied on the same conduct of Petitioner to satisfy this element for both offenses, (3) the findings incorporated in the verdicts that Petitioner was reckless in inflicting severe bodily injury for the second degree robbery conviction but acted intentionally or knowingly in engaging in the same conduct for the first degree assault conviction were inconsistent, (4) consequently, pursuant to HRS § 701–109(1)(c) (1993),[1] Petitioner could not be convicted of both offenses.

We therefore reverse Petitioner's conviction of first degree assault but affirm Petitioner's conviction of second degree robbery because (1) the prosecution's final argument focused almost entirely on robbery, (2) there was sufficient evidence to convict Petitioner of second degree robbery, (3) affirming Petitioner's conviction of second degree robbery is consistent with the jury's verdict convicting Kaulana Akau (Akau) as an accomplice to the crime of robbery in the second degree, and (4) Petitioner is not prejudiced by this disposition inasmuch as the penalties for second degree robbery and first degree assault are the same.

Additionally, we hold that a specific unanimity instruction was not required in this

1. HRS § 701–109(1)(c) provides in relevant part as follows:

§ 701–109 **Method of prosecution when conduct establishes an element of more than one offense.**
(1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
...
(c) Inconsistent findings of fact are required to establish the commission of the offenses.
(Emphases added.)

case. Also, we conclude that Petitioner waived his argument that by instructing the jury solely on accomplice liability for Kaulana Akau (Akau), the Circuit Court of the First Circuit (the court)[2] commented on the evidence in violation of Hawaiʻi Rules of Evidence (HRE) Rule 1102 (1993).[3]

## I.

### A.

On August 3, 2010, Petitioner was driving his Toyota truck through Waikiki, with Akau as a passenger. Petitioner agreed to give a ride to Brad Easterling (Complainant) and Complainant's friend, Dustin Hernandez (Hernandez). Petitioner did not know either one of them. Complainant and Hernandez rode in the bed of the truck. There are several different versions of the events that followed.

According to Complainant, he gave some marijuana to Petitioner during the ride. Upon reaching Complainant's destination, Complainant and Hernandez exited the truck. Complainant testified that he then shook hands first with Akau and then with Petitioner, both of whom were still in the truck. While shaking hands with Petitioner, Petitioner tightly grabbed Complainant's hand, Complainant dropped his skateboard, and someone took Complainant's backpack. Complainant testified that the truck then began moving and that he heard a person other than the driver, say, "take off." Complainant was then dragged for some distance and suffered serious abrasions or burns on his left arm, shoulder, hand, knee, and hip.

Akau testified that he did not see Complainant give marijuana to Petitioner during the ride. After reaching Complainant's destination, Complainant and Petitioner left the truck, but Akau did not recall Complainant shaking his hand. Akau saw Complainant give what looked like a "Ziploc" bag of marijuana to Petitioner while Complainant was standing outside of the driver's side door. Petitioner grabbed the bag and then accelerated. Akau denied seeing a backpack and did not say "take off."

According to Petitioner, Complainant did not give him any marijuana during the ride. Complainant did give him a small amount of marijuana after Complainant exited the truck. Petitioner shook hands with Complainant, but he "never pulled him" into the truck. Akau then asked Complainant if he had any marijuana for sale. At this point, Complainant was standing outside the front window of Petitioner's truck, on the driver's side. Complainant handed a Ziploc bag containing marijuana to Petitioner, which Complainant had removed from a Tupperware-type container. Petitioner handed the Ziploc to Akau, who examined it and then passed it back to Complainant.

Petitioner testified that Complainant and Akau were discussing quantity and price regarding marijuana when Petitioner received a text message from his girlfriend, which he answered. The next thing Petitioner knew, Complainant and Akau were struggling and Petitioner was being struck. Complainant reached into the truck for what Petitioner thought was Complainant's marijuana. Petitioner did not see a backpack and did not take a backpack from Complainant.

After separating Complainant and Akau, Petitioner "panicked" and drove away. After driving for some distance, Petitioner stopped at a stop sign. At that point, Akau "lunged over" Petitioner and "pulled fingers off the door." Petitioner had thought Complainant was still where he was when the car "took off."

Petitioner did not recall seeing a backpack. However, he had told the police that "if there was a backpack then [Akau] took it." Petitioner related that following the incident he thought that Akau "was trying to take [Complainant's marijuana] without paying for it."

Respondent/Plaintiff–Appellee the State of Hawaiʻi (Respondent) called the treating physician, Dr. Nip, who testified that Complainant had suffered "road burns" to his body. The burns were impregnated with asphalt, gravel, and dirt. Dr. Nip classified Complainant's injuries as third degree burns, or

---

2. The Honorable Karen S.S. Ahn presided.

3. *See* HRE Rule 1102 quoted *infra*.

the most severe type of burn injury. Based on the degree of burn, Dr. Nip indicated in his report to the police that Complainant had suffered "serious bodily injury." During his testimony, Dr. Nip did not indicate any other basis for finding serious bodily injury. In Dr. Nip's opinion, Complainant suffered "permanent disfigurement" as a result of the burns.

### B.

On August 16, 2010, Petitioner was charged in a complaint in Count one with Robbery in the First Degree, HRS § 708–840(1)(a),[4] and in Count two with Assault in the First Degree, HRS § 707–710.[5] The two counts against Petitioner read as follows:

COUNT I: On or about the 3rd day of August, 2010, in the City and County of Honolulu, State of Hawai'i, ANTHONY SANTIAGO, while in the course of committing theft, did attempt to kill or intentionally or knowingly inflict or attempt to inflict serious bodily injury [6] upon Bradley Easterling, thereby committing the offense of Robbery in the First Degree, in violation of Section 708–840(1)(a) of the Hawai'i Revised Statutes.

COUNT II: On or about the 3rd day of August, 2010, in the City and County of Honolulu, State of Hawai'i, ANTHONY SANTIAGO did intentionally or knowingly cause serious bodily injury to Bradley Easterling, thereby committing the offense of Assault in the First Degree, in violation of Section 707–710 of the Hawai'i Revised Statutes.

(Emphases added.)

Akau was charged in an indictment solely as an Accomplice to Robbery in the First Degree, HRS §§ 702–221(2)(c) (1993),[7] 702–222(1)(b) (1993),[8] and 708–840(1)(a). On February 15, 2011, the trials were consolidated.

### C.

On September 13, 2011, the court instructed the jury as to Petitioner, in pertinent part, as follows:

[I]n Count 1 …, [Petitioner] is charged with the offense of robbery in the first degree.

. . . .

There are two material elements of the offense of robbery in the first degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That, on or about August 3, 2010, in the City and County of Honolulu, State of Hawai'i, the defendant, Anthony Santiago, was in the course of committing theft; and

---

4. HRS § 708–840(1)(a) provides in relevant part as follows:

**§ 708–840 Robbery in the first degree.**
(1) A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
(a) The person attempts to kill another or intentionally or knowingly inflicts or attempts to inflict serious bodily injury upon another[.]
. . . .

5. HRS § 707–710 provides in pertinent part:

**§ 707–710 Assault in the first degree.**
(1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.
. . . .

6. "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." HRS § 707–700 (emphasis added). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.*

7. HRS § 702–221(2)(c) provides in relevant part as follows:

**Liability for conduct of another.**
. . . .
(2) A person is legally accountable for the conduct of another person when:
(c) He is an accomplice of such other person in the commission of the offense.

8. HRS § 702–222(1)(b) provides in relevant part as follows:

**Liability for another; complicity.** A person is an accomplice of another person in the commission of an offense if:
(1) With the intention of promoting or facilitating the offense, the person:
. . . .
(b) Aids or agrees or attempts to aid the other person in planning or committing it [.]

2. That, while doing so, [Petitioner] intentionally or knowingly inflicted or attempted to inflict serious bodily injury upon [Complainant].

A person commits theft if he obtains or exerts unauthorized control over the property of another with intent to deprive the person of the property.

An act shall be deemed in the course of committing theft if it occurs in an attempt to commit theft, in the commission of theft, or in the flight after the attempt or commission.

A person attempts to inflict serious bodily injury on another if, with the intent to inflict serious bodily injury, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known by [Petitioner] to create a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

. . . .

As to Count 1, . . . if, and only if, you find [Petitioner] not guilty of robbery in the first degree, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether [Petitioner] is guilty or not guilty of the included offense of robbery in the second degree.

. . . .

There are two material elements of the offense of robbery in the second degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That, on or about August 3, 2010, in the City and County of Honolulu, State of Hawai'i, [Petitioner] was in the course of committing theft; and

2. That, while doing so, [Petitioner] recklessly inflicted serious bodily injury on [Complainant].

. . . .

As to Count 1 . . . if and only if, you find [Petitioner] not guilty of robbery in the second degree, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether Defendant is guilty or not guilty of the included offense of Theft in the Fourth Degree.

. . .

As to [Petitioner] in Count 2 . . . [he] is charged with the offense of assault in the first degree.

. . . .

There are two material elements of the offense of assault in the first degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That, on or about August 3, 2010, in the City and County of Honolulu, State of Hawai'i, [Petitioner] caused serious bodily injury to [Complainant]; and

2. That [Petitioner] . . . did so intentionally or knowingly.

"Seriously bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

. . . .

(Emphases added.)

For Petitioner, the court also instructed the jury on a special interrogatory as follows:

Okay. If, and only if, you find [Petitioner] guilty of both robbery in the first degree or the included offense of robbery in the second degree in Count 1, and assault in the first degree or the included offense of assault in the second degree or the included offense of assault in the third degree in Count 2, then you must answer the following questions on a special interrogatory that will be provided to you.

1. Did the prosecution prove beyond a reasonable doubt that [Petitioner] did not commit robbery in the first degree or in the included offense of robbery in the second degree in Count 1 and assault in the first degree or the included offense of assault in the second degree or the included offense of assault in the third degree in Count 2 as part of a continuing and uninterrupted course of conduct?

2. Did the prosecution prove beyond a reasonable doubt that [Petitioner] committed robbery in the first degree or the included offense of robbery in the second degree in Count 1 and assault in the first degree or the included offense off assault in the second degree or the included offense of assault in the third degree in Count 2 <u>with separate and distinct intents, rather than acting with one intention, one general impulse, and one plan to commit both offenses?</u>

Your answers to these questions must be unanimous.

(Emphases added.)

For Akau, the court instructed the jury on the charge of Accomplice to Robbery in the First Degree and its included offenses.[9]

■ The court gave the jury a general unanimity instruction, but did not give the jury a <u>specific unanimity</u> instruction.[10]

### D.

### 1.

In final argument, the following was asserted by the prosecution. The Complainant offered Petitioner marijuana during the ride and then Petitioner asked the Complainant whether he was selling any marijuana. Petitioner "robbed" Complainant of his backpack.

The Complainant testified that both the driver and the passenger robbed him, both struck him, and both held on to the backpack so that the Complainant could not retrieve it.

The events were initiated by Petitioner when Petitioner pulled the Complainant in toward the truck after the Complainant shook his hand. Someone took Complainant's backpack and then Petitioner started hitting the Complainant. Even though Complainant could not see very much, he was inclined to say that it was Petitioner elbowing him. Petitioner sped away and Petitioner did not stop the truck because Petitioner was attempting to leave with Complainant's backpack.

The elements of robbery were met. The defendants inflicted or attempted to inflict serious bodily injury. The jury had "seen the injuries of [Complainant]" and heard the testimony of how [Complainant] suffered. The jury had also heard from Dr. Nip on the permanence of the scars and the procedures of grafting the skin. The state of mind of "intentional[ly] or knowingly" was proven because, at minimum, the defendants knew that dragging the Complainant along the side of the car would cause serious bodily injury. This happened in the course of committing theft or, in other words, when the defendants were driving away with the backpack.

---

**9.** The court's instructions to the jury for Akau were, in pertinent part, as follows:

> In Criminal Number 10–1–1378, [Akau] is charged as an accomplice to the offense of robbery in the first degree.
> . . . .
> There are two material elements of the charge of accomplice to robbery in the first degree, each of which the prosecution must prove beyond a reasonable doubt.
> These two elements are:
> 1. That, on or about August 3, 2010, in the City and County of Honolulu, State of Hawai'i, [Akau] aided or agreed or attempted to aid Anthony Santiago in the commission of robbery in the first degree; and
> 2. That [Akau] did so with intent to promote or facilitate the commission of robbery in the first degree by Anthony Santiago.
> . . . .
> . . . [I]f, and only if, you find [Akau] not guilty of accomplice to robbery in the first degree, or you are unable to reach a unanimous verdict as to this offense, then you may consider whether [Akau] is guilty or not guilty

of the included offense of accomplice to robbery in the second degree.
> . . . .
> There are two material elements to the charge of accomplice to robbery in the second degree, each of which the prosecution must prove beyond a reasonable doubt.
> These two elements are:
> 1. That, on or about August 3, 2010, in the City and County of Honolulu, State of Hawai'i, [Akau] aided or agreed or attempted to aid Anthony Santiago in the commission of robbery in the second degree; and
> 2. That [Akau] did so with intent to promote or facilitate the commission of robbery in the second degree.
> . . . .

(Emphases added.)

**10.** A specific unanimity instruction "advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *State v. Arceo,* 84 Hawai'i 1, 33, 928 P.2d 843, 875 (1996).

The injuries also showed that Petitioner caused assault in the first degree because, as to Count 2, "of course, [the jury had] seen the injuries, again causing assault in the first degree."

### 2.

In his final argument, the following was argued by counsel for Akau. Complainant gave Petitioner marijuana, but at what point that happened is disputed. When the Complainant alighted from the vehicle, he shook Petitioner's hand and it was Petitioner, not Akau, who then asked the Complainant whether Complainant had any marijuana for sale. Petitioner then reached over, grabbed the bag of marijuana, stepped on the gas, and "took off" while the Complainant was hanging onto the truck.

Petitioner concocted the story about handing the bag over to Akau. Akau did not aid or attempt to aid Petitioner in the commission of the robbery because it was Petitioner who grabbed the bag and it was Petitioner who was driving the truck that caused serious bodily injury.

### 3.

In his final argument, the following was argued by counsel for Petitioner. Petitioner neither stole from nor assaulted Complainant. Rather, there were negotiations between Akau and the Complainant. Akau was looking at the drugs while Petitioner was texting a message. The next thing Petitioner knew Akau and Complainant were shoving each other and Petitioner was struck in the head. Petitioner pushed them back, panicked, and then accelerated. Petitioner believed that the Complainant was on the outside of the truck, but the Complainant grabbed onto the truck in order to retrieve his marijuana. Had Complainant been dragged for the length and speed that Complainant asserted, Complainant would have suffered far more serious injuries.

11. Akau was sentenced to probation and did not appeal.

12. Petitioner seeks review of the May 7, 2013 judgment of the ICA filed pursuant to its April

Complainant did not immediately ask for help or call the police. Instead, Complainant walked back to where he was initially dropped off and then went to a friend's house to sleep. Only when Complainant went to the hospital were the police called. Petitioner's counsel did not specifically state that Akau was the person who committed the robbery and assault.

### E.

On September 14, 2011, the jury found Petitioner guilty of the included offense of Robbery in the Second Degree on Count one and of Assault in the First Degree on Count two. The jury answered both questions one and two of the special interrogatory "Yes." The jury found Akau guilty of the included offense of Accomplice to Robbery in the Second Degree.

### F.

The court sentenced Petitioner on both counts to concurrent ten years of imprisonment. During sentencing, the prosecution stated that "both the defendants as the jury had found were involved in this particular matter . . . the jury found them both equally as liable, one as a principal, one as an accomplice." [11]

### II.

In his Application Petitioner contends the Intermediate Court of Appeals (ICA) gravely erred (1) "in deciding that [a] specific unanimity jury instruction was not necessary" and (2) "in affirming [the court's] instructions . . . which required [the jury] to determine the guilt or innocence of the codefendant strictly as an accomplice." Petitioner requests the convictions be vacated and the case remanded for a new trial.[12]

### III.

### A.

As to the first question, Petitioner argues that it appears from the answers to the

12, 2013 Summary Disposition Order, affirming the Judgment of Conviction and Sentence filed by the court on November 29, 2011.

interrogatory that the jury concluded Petitioner committed two separate acts resulting in two separate injuries. This is because the jury found that the offenses in Count one and Count two were not part of the "same continuing course of conduct." Petitioner maintains that, therefore, in light of *Arceo*,[13] a specific unanimity instruction was necessary to ensure unanimity on the act, intent, and injury that corresponded to each count.

■ The ICA held that the court "did not plainly err."[14] *State v. Santiago*, CAAP–11–0001078, 2013 WL 1501030, at *1 (App. April 12, 2013). This is because the prosecution "charged two separate crimes" and "two preconditions for an *Arceo* unanimity instruction are proof of two or more separate and distinct culpable acts and submission to the jury that only one offense was committed[.]" *Id.*

### B.

■ A specific unanimity instruction such as that in *Arceo* was not required. In *Arceo*, the prosecution charged the defendant in an indictment with Sexual Assault in the Third Degree in Count 1 and Sexual Assault in the First Degree in Count 2. *Arceo*, 84 Hawai'i at 5, 928 P.2d at 847. In Count 1, the prosecution had aggregated multiple acts of alleged "sexual contact" from August 16, 1989 to May 4, 1990. In Count 2, the prosecution had aggregated multiple acts of alleged "sex-

ual penetration" from the same time period. *Id.* This court held that a specific unanimity instruction is required "when separate and distinct culpable acts are subsumed within a single count ... any one of which could support a conviction thereunder" and the prosecution has not elected the "specific act upon which it is relying to establish the 'conduct' element of the charged offense." *Arceo*, 84 Hawai'i at 33, 928 P.2d at 875.

■ The purpose behind an *Arceo* instruction is to advise the jury that, when the prosecution alleges multiple acts in order to support a single charge, the jury must be unanimous as to the underlying act for which the defendant is convicted.[15] *Id.* This is because as a "precept of constitutional ... law ... an accused in a criminal case can only be convicted upon proof by the prosecution of every material element of the crime charged beyond a reasonable doubt." *Id.* at 30, 928 P.2d at 872 (internal quotation marks omitted). However, unlike in *Arceo*, the prosecution in this case did not aggregate multiple acts under each count to support the charge of either robbery or assault.

### IV.

■ In order to convict Petitioner of Robbery in the Second Degree, the jury must have found in pertinent part that (1) in the

---

13. Petitioner quotes *Arceo* as follows:

> "When it appears ... that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, the trial judge must augment the general instruction [with a specific unanimity instruction] to ensure [that] the jury understands its duty to unanimous agree to a particular set of facts."

(Quoting 84 Hawai'i at 32, 928 P.2d at 874 (citing *United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir.1983)).)

14. The ICA reviewed Petitioner's contentions under the plain error standard because Petitioner apparently did not request an *Arceo* instruction at trial. Under the plain error rule, "[t]his court has the power to take notice of 'plain errors or defects affecting substantial rights ... although they were not brought to the attention of the court.'" *State v. Schnabel*, 127 Hawai'i 432, 447

n. 28, 279 P.3d 1237, 1252 n. 28 (2012) (quoting Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b)). "This court 'will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.'" *Id.* (quoting *State v. Nichols*, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006)).

15. However, "a specific unanimity instruction is not required if (1) the offense is not defined in such a manner as to preclude it from being proved as a continuous offense and (2) the prosecution alleges, adduces evidence of, and argues that the defendant's actions constituted a continuous course of conduct." *State v. Apao*, 95 Hawai'i 440, 447, 24 P.3d 32, 39 (2001). In other words, the State may allege multiple acts in a single charge provided that the multiple acts constitute a continuous course of conduct and the offense may be proved as a continuous offense. Under such circumstances, no *Arceo* instruction is necessary.

course of theft, (2) Petitioner recklessly inflicted serious bodily injury on Complainant.

The jury was not presented with any evidence showing that either the elbowing, the grabbing, or the taking of the backpack caused a "substantial risk of death" or "serious, permanent disfigurement" to Complainant. Thus, the evidence at trial established that there was only one act that created a "substantial risk of death" or caused "serious, permanent disfigurement" and that was dragging the Complainant on the road.

The statements made to the jury during final argument also support the conclusion that the infliction of "road burns" constituted the serious bodily injury element for the robbery charge. The prosecution argued that Complainant's "road burns" met the element of "infliction of serious bodily injury" for the robbery charge. The prosecution stated that an element of the robbery charge was that Petitioner inflicted "serious bodily injury." In final argument, Akau's attorney also argued that it was the road burns that constituted the serious bodily injury for the robbery charge. Petitioner's attorney did not specify to which count the road burns were attributed. He argued that the Complainant grabbed onto the truck in order to retrieve Complainant's marijuana, which was not taken by Petitioner.

■ Based on the evidence presented at trial and statements made during final argument, and applying a rational juror standard,[16] the jury must have concluded that the act that Petitioner committed in which he "recklessly inflicted serious bodily injury" under the robbery charge was the "dragging [of] Complainant along the side of the [truck]."

## V.

### A.

However, the jury also convicted Petitioner of Assault in the First Degree. In order to convict Petitioner of Assault in the First

Degree, the jury must have found that Petitioner intentionally or knowingly caused serious bodily injury to Complainant. HRS § 707–710.

In final argument, the prosecution did not specify which act constituted the assault. The prosecution merely stated that the jury had "seen the injuries[.]" The prosecution did not indicate what those injuries were. However, the only injury that constituted "serious bodily injury" that was adduced in the evidence was the "road burns." It would seem then that the jury had to have concluded that the act Petitioner committed that "intentionally or knowingly caus[ed] serious bodily injury" to Complainant under the Assault in the First Degree charge was also the act of "dragging [ ] Complainant along the side of the [truck]."

But by answering "Yes" to the second special interrogatory question, the jury also found that Petitioner committed robbery in the second degree and assault in the first degree with "separate and distinct intents, rather than acting with one intention, one general impulse, and one plan to commit both offenses[.]" Therefore, the jury did not find that the offenses of robbery in the second degree and assault in the first degree merged.

If, as the jury found, each of the offenses of robbery in the second degree and assault in the first degree were committed separately, each respective verdict must have rested on an act of inflicting "serious bodily injury." Consequently, the jury apparently utilized the act of dragging Complainant with the truck as the basis for its verdicts on both robbery in the second degree and assault in the first degree.

However, conviction of both offenses based on the same conduct is precluded by HRS § 701–109(1)(c). Under HRS § 701–109(1)(c), when the same conduct of the defendant establishes an element of more than one offense, the defendant may not be con-

---

16. This court should " 'with realism and rationality ... examine the record ... taking into account the pleadings, evidence, charge, and other relevant matter ... [,]' " so as to determine in which act a rational jury would have grounded

its verdict. *State v. Mundon,* 129 Hawai'i 1, 15, 292 P.3d 205, 219 (2012) (quoting *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)).

victed of both offenses if "[i]nconsistent findings of fact are required to establish the commission of the offenses."

### B.

The jury's verdicts in the instant case reflected the inconsistent factual determinations that the defendant committed the same act of dragging Complainant with his vehicle with both a reckless (robbery second) and intentional or knowing (assault first) state of mind. The jury's verdict of guilty as to robbery in the second degree required a finding that the defendant <u>recklessly</u> inflicted serious bodily injury by dragging Complainant with the truck. However, the jury's verdict of guilty as to assault in the first degree necessitated a finding that the defendant <u>knowingly or intentionally</u> inflicted serious bodily injury by dragging complainant with the truck.

■ Because the jury's verdict found that Petitioner inflicted severe bodily injury both (1) intentionally or knowingly and (2) recklessly, it contained "inconsistent findings of fact." *Briones v. State*, 74 Haw. 442, 457, 848 P.2d 966, 974 (1993) (holding that a ver-

dict violated HRS § 701–109(1)(c) because it found that the defendant acted with "two mutually exclusive states of mind"); *see also People v. Hoffer*, 106 Ill.2d 186, 88 Ill.Dec. 20, 478 N.E.2d 335, 340 (1985) (holding that the jury's verdict was inconsistent because "the jury concluded that the defendant killed another[ ] intentionally or knowingly ... while simultaneously finding that defendant recklessly but unintentionally caused the death of the victim"); *Griffin v. Parker*, 219 Conn. 363, 593 A.2d 124, 127 (1991) ("[T]he transgression that caused the victim's injuries was either intentional or reckless; it could not, at one and the same time, be both."). Therefore, the jury inconsistently found that Petitioner intentionally or knowingly <u>and</u> recklessly inflicted serious bodily injury on Complainant. Hence, under HRS § 701–109(1)(c), Petitioner could not be convicted of both robbery in the second degree and assault in the first degree. *See Briones*, 74 Haw. at 457, 848 P.2d at 974.[17]

### VI.

■ Inasmuch as Petitioner cannot be convicted of both offenses, we are faced with

---

17. Arguably, this conclusion may also be reached on other grounds. It has been explained that " 'robbery appears to consist of both theft and threatened or actual assault.' " *State v. Ah Choy*, 70 Haw. 618, 621, 780 P.2d 1097, 1100 (1989) (quoting Commentary to HRS §§ 708–840 and 708–841). The assault must occur "in the course of committing theft." *See* HRS § 708–840. The legislature, "in recognition of the 'increased risk of harm' present in a robbery '[beyond what] the sum of its simple components would seem to indicate' has sought to punish robbery 'more severely than the sum of its simple components.' " *Ah Choy*, 70 Haw. at 621, 780 P.2d at 1100 (quoting Commentary to HRS §§ 708–840 and 708–841). However, the legislature "did not intend to create an anomaly or an absurd result." *Id.* at 622, 780 P.2d at 1000. Thus, in the context of a prosecution for robbery and attempted murder, this court has held that "the legislature never intended that a defendant be convicted of both robbery in the first degree and its component offense of attempted murder in the absence of evidence that the defendant committed both offenses separately in time." *Id.*

In the instant case, in Count one, Petitioner was charged with robbery in the first degree and the court instructed the jury as to the lesser included offenses of robbery in the second degree and theft in the fourth degree. In Count two, Petitioner was charged with assault in the first degree and the lesser included offenses of assault

in the second degree and assault in the third degree. Under the facts of the case, there was a possibility that the jury would find that the Petitioner committed both theft and assault, but that the assault did not occur "in the course of committing theft." Had the jury made such a determination, the proper result would have been to find Petitioner guilty of theft in the fourth degree in Count one, and assault in Count two.

However, "the legislature did not intend to create an anomaly or an absurd result," and did not intend for a defendant to be convicted of both robbery and its component offense of assault in the absence of evidence that the defendant committed both offenses separately in time." *Id.* Thus, under the circumstances of this case, if the jury found Petitioner guilty of robbery in the first degree or robbery in the second degree, it should not have reached Count two, which contained "the component offense of assault." *See id.; cf.* discussion *supra*. Hence, arguably, "the [court's] instruction should have been framed so that once the jury determined that [Petitioner] was guilty of [robbery in the first degree or robbery in the second degree], [the jury] need not go any further with respect to the assault count." *Id.* at 623, 708 P.2d at 1101. Thus, the case may also be resolved on the grounds that the court's erroneous instructions allowed the jury to improperly convict Petitioner of both robbery and assault. *See* discussion *supra*.

the question of which count may not survive. When faced with a situation in which a defendant was wrongly convicted of two offenses, this court has considered principles of equity and judicial economy in dismissing one of the counts. In *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998) *overruled on other grounds by State v. Brantley*, 99 Hawai'i 463, 56 P.3d 1252 (2002), this court determined that the murder conviction was a lesser included offense of the firearm conviction and so the defendant should not have been convicted on both counts.[18]

Although *Jumila* recognized that the usual practice was to reverse the conviction and sentence for the lesser included offense, it was decided that doing so would be "manifestly unfair to the prosecution and to the public," because murder was "an offense of a higher class and grade." *Id.* This court concluded that the appropriate disposition was to reverse the jury's conviction on the firearms charge. *Id.* (citing *State v. Liuafi*, 1 Haw.App. 625, 644, 623 P.2d 1271, 1283 (1981)). Here, however, the convictions are of equal grade. Robbery in the Second Degree and Assault in the First Degree are both Class B felonies, with a maximum term of ten years each. HRS §§ 708–841(2), 707–710(2), 706–660(1). As noted, the court sentenced Petitioner to ten years of imprisonment on both counts to run concurrently.

If it is apparent which count of the verdict should be dismissed, the error may be cured by reversing only that count. In *Liuafi*, the ICA held that a defendant's conviction of both attempted murder and the failure to render assistance to the victim of an accident rested on inconsistent findings of fact[19] and was therefore precluded by HRS § 701–109(1)(c). *Liuafi*, 1 Haw.App. at 643, 623 P.2d at 1282. However, it was not necessary to reverse every count of the inconsistent verdict "unless prejudice [was] shown." *Id.* at 643, 623 P.2d at 1283. The ICA concluded that because of "the specificity of the instructions on the attempted murder charge, the strength of the State's case on that charge, and the lack of definitional certainty on the [failure to render assistance] charge ... the proper disposition [was] to vacate the judgment of conviction [only] as to [the failure to render assistance charge.]" *Id.*

In the instant case, Respondent's final argument was premised almost entirely on the theory that Petitioner was guilty of the robbery charge. On the other hand, the prosecution mentioned the assault charge only in passing.

Akau's counsel also tied the serious bodily injury to the robbery, but argued that Akau did not aid in the commission of robbery because Akau was not driving the truck which caused the road burns. Upholding the robbery conviction of Petitioner would be consistent with the verdict finding Akau guilty of being an accomplice to robbery, in this consolidated case. Neither the public nor the prosecution would be treated unfairly by dismissal of the assault charge. Petitioner's sentences were to run concurrently, in effect one ten year sentence was imposed for both convictions.

Because there was sufficient evidence to convict Petitioner as to robbery in the second degree and because the penalties for the robbery and assault convictions are the same, it cannot be said that Petitioner would be prejudiced by dismissal of the assault charge.

---

**18.** In *Jumila*, this court held that murder in the second degree was an included offense of the charge of carrying or use of a firearm in the commission of a separate felony, and therefore the defendant could not be convicted of both. 87 Hawai'i at 3, 950 P.2d at 1203. This aspect of *Jumila* was overruled in *Brantley*, which held that the legislature did not intend murder in the second degree to be a lesser included offense of carrying or use of a firearm in the commission of a separate felony. 99 Hawai'i at 469, 56 P.3d at 1258.

**19.** The ICA in *Liuafi* held that the jury's verdict was inconsistent because a defendant could only be guilty of the failure to render assistance if he or she was "involved in an accident." 1 Haw. App. at 642, 623 P.2d at 1282. However, by finding the defendant guilty of attempted murder, the jury found that he had "intentionally attempt[ed] to murder a person by using [his] vehicle as a weapon." *Id.* at 643, 623 P.2d at 1282. According to the ICA, this incident did not fall within the definition of an "accident," and therefore no accident occurred. *Id.* Thus, the ICA held that the verdict was inconsistent. *Id.*

*See Liuafi,* 1 Haw.App. at 643, 623 P.2d at 1283. Thus, the error can be remedied simply by reversing the conviction for assault. *See id.; see also* Commentary to Model Penal Code § 1.07 (noting that when a defendant is convicted of two offenses based on inconsistent findings of fact, "[c]ourts have long held that <u>both convictions cannot stand</u>" (emphasis added)); *cf.* Commentary to HRS § 701–109(1) (noting that HRS § 701–109(1) "reflects a policy to limit the possibility of <u>multiple convictions</u>" (emphasis added)). Therefore the assault conviction must be reversed.[20]

## VII.

### A.

With respect to the second question, Petitioner argues that the court erred in instructing the jury solely on accomplice liability as to Akau. In Petitioner's version of the facts, he maintained that he did not rob the Complainant and if there was a robbery, it was committed by Akau. Petitioner argues that by instructing the jury solely on accomplice liability for Akau, the court adopted the prosecution's version of the facts and rejected Petitioner's view of the case. Petitioner contends that in doing so, the court abrogated the jury's prerogative as the finder of fact by precluding the jury from determining that Akau committed the robbery. According to Petitioner, the court thus commented on the evidence in violation of HRE Rule 1102.[21]

The ICA held the court "did not plainly err when it instructed the jury as to [Akau] solely as an accomplice." *Id.* The ICA determined that "[Petitioner] does not provide authority ... that it was a comment on the evidence to limit instructions to the specific charge, nor ... that it was plain error when [the court] failed to, sua sponte, advance [Petitioner's] alternate defense theory ... via jury instruction[,]" and affirmed the conviction. *Id.*

### B.

At trial, Petitioner did not object to the court's instructions or argue that the court's instructions constituted a comment on the evidence under HRE Rule 1102. Additionally, Petitioner did not request any additional instructions reflecting his position that although Akau was only charged as an accomplice, Akau was solely responsible for the

---

20. In *Briones*, this court held that the inconsistent verdict in that case required a new trial. 74 Haw. at 458, 848 P.2d at 974. In *Briones*, however, the defendant was convicted of both attempted murder in the first degree and attempted murder in the second degree, *see id.* at 447, 848 P.2d at 970, which are subject to different statutory penalties. *See* HRS § 706–656. The entry of judgment as to one count may have prejudiced the defendant because it could not be determined which sentence was appropriate. *See Milanovich v. United States*, 365 U.S. 551, 555, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (holding that "setting aside the shorter concurrent sentence [did not] suffice[ ] to cure any prejudice [to the defendant]," because on remand the jury may have found her guilty only of the crime carrying the shorter sentence).

However, *Briones* also cited *United States v. Daigle*, 149 F.Supp. 409 (D.D.C.1957). In *Daigle*, the federal district court remedied an inconsistent verdict by reversing the conviction carrying the greater statutory penalty. *Id.* at 414. *Daigle* reasoned that "the defendant was in no [way] prejudiced" because he was subject only to a "less severe" sentence. *Id.*

Unlike in *Briones* and *Milanovich*, in the instant case the penalties for Petitioner's two convictions are identical. Additionally, Respondent clearly focused on the robbery charge in closing

argument and sufficient evidence existed to convict the defendant on that charge. *See Liuafi*, 1 Haw.App. at 643, 623 P.2d at 1283. Therefore, unlike in *Briones*, no prejudice inheres in vacating the conviction of assault in the first degree.

Reversal of the assault conviction is also consistent with *Ah Choy*. As explained *supra*, in *Ah Choy* this court held that it was error for a court to instruct a jury that it could convict a defendant of both robbery in the first degree and its "component offense" of attempted murder in the absence of evidence that the defendant committed both offenses separately in time. 70 Haw. at 622, 780 P.2d at 1101. This court therefore set aside the defendant's sentence with respect to the robbery conviction, but upheld the defendant's sentence with respect to attempted murder. *Id* at 623, 780 P.2d at 1101. Similarly, here, the conviction for robbery in the second degree is affirmed, but the conviction for assault in the first degree is set aside.

21. HRE Rule 1102 states:

The court shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence. It shall also inform the jury that they are the exclusive judges of all questions of fact and the credibility of witnesses.

robbery.[22]  Accordingly, he waived any objection to the court's instructions under HRE Rule 1102.  *See* HRE Rule 103(a).

### VIII.

Based on the foregoing, the November 29, 2011 judgment of the court and the May 7, 2013 judgment of the ICA are affirmed in part and reversed in part.  The case is remanded to the court to enter an order dismissing the charge of Assault in the First Degree, and the sentence imposed thereon, with prejudice.  The November 29, 2011 judgment of the court and the May 7, 2013 judgment of the ICA as to Petitioner's conviction for Robbery in the Second Degree is affirmed.

---

**22.**  Petitioner also did not request that he be tried separately from Akau. Rather, Petitioner stipu-lated to Respondent's request to consolidate the two trials.